**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 16, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RUDY STANKO, individually and on
behalf of similarly situated cattle
traders,

      Plaintiff - Appellant,

  v.

JIM MAHAR, individually and in his
official capacity,

      Defendant - Appellee.

No. 04-8084

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 04-CV-03-B)**

---

Submitted on the briefs:

Rudy Stanko, Gordon, Nebraska, Plaintiff-Appellant, Pro se.

Patrick J. Crank, Attorney General, John W. Renneisen, Deputy Attorney General,
Misha Westby, Senior Assistant Attorney General, David L. Delicath, Assistant
Attorney General, Office of the Attorney General, Cheyenne, Wyoming for
Defendant-Appellee.

---

Before **LUCERO**, **McKAY**, and **ANDERSON**, Circuit Judges.

**McKAY**, Circuit Judge.

Plaintiff Rudy Stanko, proceeding pro se, appeals from the district court's order granting summary judgment to defendant Jim Maher [1] on Mr. Stanko's complaint alleging violations of his constitutional rights. [2] We affirm the entry of summary judgment in favor of Mr. Maher. [3]

## FACTS

Mr. Stanko is a resident of Gordon, Nebraska who operates as a stock owner and drover in Fremont, Natrona, and Teton Counties, Wyoming. Mr. Maher is a brand inspector employed by the State of Wyoming Livestock Board (Board).

---

[1] The case caption spells Mr. Maher's name "Mahar" but it appears that the correct spelling is "Maher."

[2] Mr. Stanko's complaint recites that it is brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* creates a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities. Mr. Maher is a state brand inspector. Therefore, this action arises, if at all, pursuant to 42 U.S.C. § 1983 rather than *Bivens*.

[3] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**1. Stanko's complaint**

In his complaint, Mr. Stanko alleges that on or about November 9, 2003, Mr. Maher went on land leased by Mr. Stanko south of Jackson, Wyoming, without Mr. Stanko's consent or a warrant, and seized five head of livestock, consisting of two cow/calf pairs and one yearling. He further asserts that Mr. Maher, possibly acting in concert with others, [4] then transported the cattle to Fremont County and instructed that they be sold at the Riverton Livestock Exchange.

Mr. Stanko asserts that he is the owner of the cattle and has not been compensated for them. He contends that Mr. Maher violated the United States and Wyoming Constitutions by infringing on his rights to due process and just compensation and by conducting an impermissible warrantless seizure. He further asserts that Mr. Maher abused his office in violation of the Wyoming Constitution.

**2. Maher's motion for summary judgment**

In his motion for summary judgment, Mr. Maher states that Mr. Stanko does business as Fish Creek Cattle Company (Fish Creek). Three separate brands

---

[4]    As originally captioned, Mr. Stanko's complaint included four unnamed "John Doe" defendants. He later moved to amend his complaint, asserting that he had identified some of these defendants through the discovery process. The district court denied this motion, however, finding that Mr. Stanko had failed to comply with certain local rules in connection with the motion.

are registered with the Board for use by Fish Creek. (Mr. Maher supplies a copy of the brand registrations for these brands.) Mr. Maher further recites that Fish Creek leases the Sherr-Thoss Ranch in Teton County, Wyoming for its cattle operation.

In the fall of 2003, Fish Creek wanted to move its cattle to a location outside Teton County. Under the Wyoming Statutes, the cattle had to be brand inspected before they could be moved across county lines. Mr. Maher contends that Mr. Stanko arranged for the required inspection of the cattle he intended to remove from Teton County.

Mr. Maher further contends that on November 6, 2003, he and another brand inspector went to the Sherr-Thoss Ranch to inspect brands on the cattle Mr. Stanko wanted to remove from Teton County. Five of the animals inspected – two cows, two calves and one steer -- did not bear brands registered to Fish Creek. To be certain of the brands, Mr. Maher shaved the animals on their right shoulder and right hip, but still did not find any Fish Creek brands. He did detect two brands on each of the cows: (1) the Double T brand belonging to the Mary Mead Revocable Trust, on each of their left shoulders, and (2) the A-Bar brand registered to Leland and Karen Turner, on each of their left ribs. The calves were not branded. The steer bore a mottled brand that Mr. Maher believes may have been the Turner's A-Bar, the Triangle brand registered to the Estate of Marvin

-4-

Taylor Lawrence, or some similar brand. Mr. Maher removed all five animals as estrays and completed an Estray Livestock Report.

Mr. Maher states that Mr. Stanko telephoned him on November 9, 2003 and demanded return of the five cattle. He told Mr. Stanko that he must produce proof of ownership of the animals; Mr. Maher contends that Mr. Stanko refused to do this. Because Mr. Stanko did not produce proof of ownership, Mr. Maher consigned the cattle to the Riverton Livestock Auction for sale. The animals were sold and the proceeds were deposited with the Board. Mr. Maher further contends that Mr. Stanko failed to petition the Board for a hearing concerning the Board's actions.

**3. Mr. Stanko's response**

In Mr. Stanko's response to Mr. Maher's motion for summary judgment, he disagrees with some of the aforementioned facts. He contends that he was the owner of the livestock, that he did not request that the animals be removed from Teton County, and that he did present his grievance before the Board at its meeting on December 11, 2003. He attaches a number of documents that he contends show his ownership of the cattle, and a Wyoming Livestock Board Attendance Roster. As will be seen, none of these allegedly contested facts precludes the entry of summary judgment on Mr. Stanko's complaint.

ANALYSIS

## 1. Standard of review

> We review a district court's grant or denial of summary judgment de novo. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the evidence presents a genuine issue of material fact, we view it in the light most favorable to the party against whom summary judgment was entered.

*Petersen v. Farnsworth*, 371 F.3d 1219, 1221 (10th Cir. 2004) (quotations and

citations omitted).

## 2. Alleged Seventh Amendment violation

Mr. Stanko contends that the district court deprived him of a right to trial

by jury in violation of the Seventh Amendment by entering summary judgment

against him. As we have stated on many occasions, however, "[t]he Seventh

Amendment is not violated by proper entry of summary judgment . . . because

such a ruling means that no triable issue exists to be submitted to a jury."

*Shannon v. Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001). Nor did the district

court engage in impermissible fact-finding, as he contends; its entry of summary

judgment was dependent on a determination that no genuine issue of material fact

existed for a jury to decide. *See* Fed. R. Civ. P. 56(c). [5] Mr. Stanko's Seventh

---

[5] Mr. Stanko also maintains that the entry of summary judgment violated Art.
(continued...)

-6-

Amendment assertion is valid only if summary judgment was improperly entered in this case, an issue that we consider with regard to his other claims.

### 3. Alleged Fourth Amendment violation

Mr. Stanko contends that Mr. Maher and/or the State of Wyoming needed an oath, affirmation and/or a warrant before they seized cattle belonging to him. Mr. Maher responds that he seized the cattle as estrays, as he was permitted to do by the Wyoming statutes.

The Wyoming brand inspection statutes provide that cattle may not be removed from one Wyoming county to another without inspection:

> Except as hereafter provided or except as provided in W.S. 11-20-224 [governing livestock used for "rodeo, show, racing, pleasure or Wyoming farm or ranch work purposes" and supplied with a permanent brand inspection certificate], it is unlawful for any person, firm, partnership, corporation, or association to sell, change ownership or to remove or cause to be removed in any way from any county in Wyoming to any other county, state or country, any livestock unless each animal has been inspected for brands and ownership at the time of delivery or removal by an authorized

---

[5](...continued)
I, § 9 of the Wyoming Constitution. Federal law rather than state law governs the use of summary judgment in the federal courts. *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1106 (10th Cir. 1991). Even if Wyoming law concerning the entry of summary judgment were relevant, the Wyoming courts have held that the entry of summary judgment in a proper case is appropriate, even though it may deprive a party of his right to jury trial. *See Fiedler v. Steger*, 713 P.2d 773, 776 (Wyo. 1986) (stating summary judgment "is a final judgment which denies parties the right to a trial before a jury of their peers").

Wyoming brand inspector and a proper certificate of inspection or clearance has been issued.

Wyo. Stat. § 11-20-203(a).

The statutes further provide that a person wishing to remove his cattle across county lines must seasonably notify the brand inspector and cooperate with the inspection:

> Except as otherwise provided, before removing any livestock from any county of Wyoming, the person selling or intending to cause removal shall notify the inspector of the date of the intended removal and the time and place when and where the required inspection for brands and ownership can be made. The inspection shall be made within a reasonable time prior to shipment. The person in charge of the livestock shall hold the livestock at the place designated until the livestock have been inspected and an official certificate of inspection is issued. The person in charge shall render the inspecting officer such assistance as is practicable while the required inspection is being made.

Id. § 11-20-205(a).

One of the purposes of the brand inspection is to determine whether the cattle to be removed across county lines contain any estrays. "Estrays, the ownership of which is unknown, shall not be removed from the county except by order of the inspector in accordance with W.S. 11-24-102." Id. § 11-20-205(d). An estray is defined as follows:

> "Estray" means any animal found running at large upon public or private lands, fenced or unfenced, in Wyoming whose owner is unknown in the territory where found or the owner of which cannot with reasonable diligence be found, or that is branded with two (2) or

more brands the ownership of which is disputed, neither party holding a bill of sale. *An estray includes any animal for which there is no sufficient proof of ownership found upon inspection[.]*

*Id.* § 11-24-101(a)(ii) (emphasis added).

A person who comes into possession of an estray is required to notify a brand inspector, who is to inspect and attempt to identify the animal:

> When any person takes up an estray he shall immediately notify an inspector who shall inspect or cause to be inspected the estray for brands and other evidence of ownership and make a diligent effort to learn or determine ownership of the animal. The inspector may cause any estray to be held for not more than ten (10) days after the inspection at a total expense of not more than fifty cents ($.50) per day to enable him to complete his investigation of ownership. . . . If the rightful owner cannot be found, or when found, refuses or fails to pay the charges for feed and care of the estray, the inspector shall order the estray sent to the most feasible convenient public market designated by the inspector to be sold. Incurred charges for feed and care by the inspector and reasonable shipping and sales expense shall be paid from the proceeds of sale. The net proceeds, if any, received from the sale of the estray after deduction of authorized expenses, shall be forwarded to the estray fund of the board or its agency. The board or agency shall hold the proceeds in a special fund known as estray fund until paid to the rightful owner of the estray or otherwise disposed of according to law.

*Id.* § 11-24-102(a).

Mr. Maher contends that he complied with these procedures by inspecting Mr. Stanko's cattle after Mr. Stanko notified him that the cattle would be moved from Teton County. During the course of the inspection, he discovered cattle for which Mr. Stanko did not provide adequate proof of ownership. He seized these cattle and they were ultimately sold as estrays.

Mr. Stanko responds that the cattle belonged to him, not to Fish Creek, and the lack of a Fish Creek brand was therefore irrelevant. He states that the cattle were not branded because he does not brand his cattle, believing that this reduces their value. Assuming these facts are true, Mr. Stanko was still responsible for providing sufficient proof of ownership upon inspection. Failure to do so meant that the cattle were defined as estrays under Wyo. Stat. § 11-24-101(a)(ii).

Mr. Stanko contends, however, that the cattle could not have been "estrays" because they were not running at large, he was taking care of them, and he was known to be their owner. While an estray animal is generally one that has escaped from its owner and is running at large, § 11-24-101(a)(ii) also defines as an "estray" *any* animal for which there is insufficient proof of ownership upon inspection.[6] Thus, the fact that the cattle were not "running at large" and that Mr. Stanko was taking care of them is immaterial. Mr. Stanko's claim that he was "known" to be the owner is not relevant proof of that ownership in the form required by statute.

---

[6]     The brand inspection statutes in a neighboring state contain a similar provision that sheds light on the definition of "estray" animals in the Wyoming Statute. The Colorado Statute states that if, while inspecting animals prior to shipment, a brand inspector "finds any animals bearing marks and brands other than those of the owner of the other cattle in such shipment" and if the owner or shipper fails to provide proof of ownership, the brand inspector "shall forthwith *declare them to be estrays*." Colo. Rev. Stat. § 35-53-107 (emphasis added). Thus, under both the Wyoming and Colorado statutes, an animal need not be found running at large or uncared for to be considered an estray.

The Wyoming Statutes specify the type of proof of ownership that is acceptable upon brand inspection. The person in charge of the livestock may be required to produce a "brand record, bill of sale or the affidavits of at least two (2) responsible citizens of the county who are not interested financially in the animals." *Id.* § 11-20-205(c). Mr. Stanko has failed to establish that he provided any of the required types of proof, in a form acceptable to the Livestock Board, upon inspection.

Mr. Stanko also asserts that he did not intend to move the cattle from Teton County in the Fall of 2003, and did not want them brand inspected. He contends that because of this, the search was not consensual and Mr. Maher had no right to be on his land. The uncontroverted evidence shows, however, that Mr. Maher performed the inspection because he was requested to do so. In Mr. Maher's deposition, he stated that he went on the Sherr-Thoss property because he was requested to do a brand inspection that day. R doc. 22, ex. "A" at 89. [7] A

---

[7] Mr. Maher's deposition transcript was attached to Mr. Stanko's "Pre-trial Brief in Support of Injunction and Petition for Declaratory Judgment. " R. doc. 22. Both parties make reference to Mr. Maher's deposition in support of their factual allegations on appeal. Although the deposition was not, strictly speaking, submitted as part of the summary judgment record, it was before the district court prior to the entry of summary judgment and we therefore consider it part of the record for purposes of summary judgment review. *See* Fed. R. Civ. P. 56(c) (authorizing entry of summary judgment based on "pleadings, depositions, answers to interrogatories, and admissions *on file*") (emphasis added); *cf.* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice &*

(continued...)

memorandum of the Wyoming Livestock Board submitted by Mr. Stanko, and uncontroverted by appropriate factual evidence, further notes that the estray cattle "were taken out of the [Fish Creek] herd as legitimate estrays during the course of *arranged Brand Inspections* as provided by law." *Id.*, ex. "B." (emphasis added).

Although Mr. Stanko argued in his pleadings that he did not intend to move the seized cattle from Teton County, he did not specifically deny Mr. Maher's contention that he called for a brand inspection. Even Mr. Stanko's vague claims that he did not intend for the cattle to be moved and that Mr. Maher went on his land without permission are supported by nothing but unverified evidence. Under the admissible evidence in this case, *see* Fed. R. Civ. P. 56(e), it is undisputed that Mr. Stanko, or someone acting on his behalf, requested an inspection of the seized cattle.

Under the circumstances presented, the brand inspection statutes authorized Mr. Maher to inspect the cattle. There was no Fourth Amendment violation. A warrantless search of cattle about to be transported outside the county was authorized by statute to protect the urgent state interest of preventing trafficking

---

[7](...continued)
*Procedure* § 2722, at 378 (3d ed. 1998) (stating "an affidavit submitted to support another motion may be taken into account on a motion for summary judgment"); *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 236 n.7 (10th Cir. 1968) ("It is clear that a movant for summary judgment may rely upon affidavits already in the record.").

in lost or stolen cattle. *See, e.g., United States v. Biswell*, 406 U.S. 311, 317 (1972) (authorizing warrantless regulatory searches). The undisputed evidence shows that Mr. Stanko requested or consented to the search in order to be permitted to move the cattle.

As for the seizure of the cattle, once they were inspected and Mr. Stanko did not provide the required proof of ownership, Mr. Maher was authorized by statute to seize them. Such a regulatory seizure, specifically authorized by statutes designed to protect the urgent state interest of preventing trafficking in lost or stolen cattle, did not require Mr. Maher to obtain a warrant. *See id*. We conclude that Mr. Stanko has failed to demonstrate a Fourth Amendment violation.

**4. Alleged Fifth Amendment due process violation**

"'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.' Time and again, the Supreme Court has made clear that 'some form of hearing is required before an individual is finally deprived of a property interest.'" *Lawrence v. Reed*, 406 F.3d 1224, 1233 (10th Cir. 2005) (*quoting Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Property interests entitled to protection are created not by the Constitution, but rather by sources independent of it such as state law. *See*

*Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1254 (10th Cir. 2005).

The owner of cattle or other livestock clearly has a property interest protected by the Fifth and Fourteenth Amendments against its seizure and disposition. *See, e.g., Siebert v. Severino*, 256 F.3d 648, 659-60 (7th Cir. 2001). Notwithstanding the fact that Mr. Stanko was unable to substantiate his ownership of the cattle to Mr. Maher's satisfaction, he had a sufficient claim of property interest to require due process protections against seizure and disposition of the cattle. *See, e.g., Wolfenbarger v. Williams*, 774 F.2d 358, 362 (10th Cir. 1985) (holding pawnbroker had interest in stolen property sufficient to warrant due process protection).

Having determined that Mr. Stanko had a property interest in the cattle, we must next address what sort of process he was entitled to in connection with their seizure and sale. The Supreme Court has identified three factors that should be considered in determining the specific dictates of due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335.

Applying these criteria, we determine that the procedure provided prior to the seizure of cattle in this case (the "pre-deprivation process") met due process requirements. While Mr. Stanko had a substantial interest in maintaining his rights to the seized cattle, *see Siebert*, 256 F.3d at 660, this interest was adequately served by the procedures provided. The risk of erroneous deprivation was low, because the statutes (1) limit the persons authorized to make a seizure to licensed brand inspectors; (2) provide the person in charge of the cattle with an opportunity to avoid a proposed seizure by submitting proof of ownership; and (3) require that the inspection leading to seizure "shall be made by daylight in such manner as to enable the inspecting officer to make a thorough and efficient inspection." Wyo. Stat. § 11-20-205(c). Additional procedural safeguards such as further verification of ownership or more elaborate hearings prior to seizure would run the risk of unnecessarily delaying the shipment of cattle. Finally, the government's interest is high, because the statutes are designed to prevent estray cattle from being transported to another county and sold or disposed of there. *See Alfred v. Esser*, 15 P.2d 714, 715 (Colo. 1932) (stating estray statutes are "intended to protect the cattleman against loss of his cattle by wandering or theft."). In sum, the procedures employed prior to seizure here provided adequate pre-deprivation process.

The procedures provided after seizure and disposition also provided an adequate post-deprivation remedy. First, we note that the statutes did not place sole responsibility on Mr. Stanko to establish ownership after seizure, but required the brand inspector to make a "diligent effort to learn or determine ownership of the animal." Wyo. Stat. § 11-24-102(a). Mr. Maher testified that he and other inspectors fulfilled this duty by attempting to verify the ownership of the seized cattle, traveling to Idaho to check out Mr. Stanko's contention that he had bought the cattle at a sale barn there. As provided by the statutes, Mr. Maher caused the cattle to be held for five days while he completed his investigation. *See id.* He also completed an Estray Livestock Report identifying the cattle that had been seized.

Second, Mr. Stanko was provided with an opportunity to prove his ownership of the cattle. When he failed to provide adequate proof of ownership, the cattle were transported to a public market and sold, the proceeds held by the Wyoming Livestock Board and made available to Mr. Stanko upon proof of ownership. *See id.* These proceeds were to be held for a year to permit Mr. Stanko to provide adequate proof that he was the owner of the cattle. *Id.* § 11-24-112. Mr. Stanko has failed to establish that the submissions he made to prove ownership satisfied the requirements of the statutes, but his opportunity to

do so certainly satisfied the requirements of due process. These procedures provided adequate post-deprivation process. [8]

### 5. Alleged Fifth Amendment just compensation violation

Mr. Stanko further claims that Mr. Maher took his property without providing just compensation. His argument on this point is extremely cursory. He cites the principle that private property may not be taken without just compensation, then lists his own estimate of the valuation of the cattle, and states that he "has not receive[d] one penny for his property from the State of Wyoming." Aplt. Opening Br. at 21. Mr. Stanko does not address the effect of the Wyoming Statutes permitting him to provide proof of ownership, and to receive the proceeds for the sale of the cattle. His argument lacks merit.

---

[8] In support of his due process claim, Mr. Stanko cites *Bowden v. Davis*, 289 P.2d 1100 (Ore. 1955) (en banc), a case in which the Oregon Supreme Court declared unconstitutional a much more draconian statute than that at issue here. *Bowden* is easily distinguished from the facts in this case. In *Bowden*, the relevant statute gave the owner of a horse found on public lands only two days to pay a roundup charge or see his animal deemed abandoned and forfeited to the state. *Id.* at 1103. No provision was made for payment to the owner of any proceeds received from a forfeited horse. *Id.* at 1111. The defendants in *Bowden* admitted that animals they had seized running at large on public lands were owned by plaintiff. *Id.* at 1101. They nevertheless withheld the animals from plaintiff, because plaintiff had failed to pay the applicable roundup charge. *Id.* Here, by contrast, Mr. Stanko was given appropriate opportunities to provide acceptable proof of ownership and thereby to recover the cattle or their proceeds, but apparently failed to do so.

### 6. Alleged violation of Art. I, § 7 of Wyoming constitution

Mr. Stanko argues that he has stated a claim under Article I, Section 7 of the Wyoming Constitution, which provides that "Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." He also argues that the Wyoming Constitution grants him certain greater protections of "basic common law rights" than the United States Constitution. Aplt. Opening Br. at 16. An action under § 1983, however, cannot be maintained on the basis of alleged violations of state law. *See, e.g., Rector v. City & County of Denver*, 348 F.3d 935, 947-48 (10th Cir. 2003). [9] We therefore reject Mr. Stanko's alleged state-law based claims for relief.

The judgment of the district court is AFFIRMED. The mandate shall issue forthwith.

---

[9] We further note that Mr. Stanko has failed to provide any independent constitutional analysis based on the Wyoming Constitution, a prerequisite to assertion of greater protections than those provided by the federal constitution. *See, e.g., Kenyon v. State*, 96 P.3d 1016, 1021 n.5 (Wyo. 2004), *cert. denied*, 125 S. Ct. 1389 (2005).