**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BETH WARD; BRYAN WARD; and
TIMBERLINE RECREATIONAL
CAMP, INC., d/b/a KIDS'
CONNECTION,

      Plaintiffs-Appellants,

v.

LESLIE ANDERSON; SUSAN
McKELLAR; BEVERLY
CAMPBELL,

      Defendants-Appellees.

No. 06-8014

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 04-CV-248-ABJ)**

---

Timothy C. Kingston of Graves, Miller & Kingston, P.C., Cheyenne, Wyoming,
for Plaintiffs-Appellants.

John D. Rossetti, Wyoming Senior Assistant Attorney General (Patrick J. Crank,
Attorney General; John W. Renneisen, Deputy Attorney General, with him on the
brief), Cheyenne, Wyoming, for Defendants-Appellees.

---

Before **BRISCOE, EBEL** and **GORSUCH,** Circuit Judges.

---

**EBEL**, Circuit Judge.

Plaintiffs-Appellants Beth and Bryan Ward own a child care facility, Kids' Connection, that was the subject of an investigation by the Wyoming Department of Family Services ("DFS"). DFS notified the Wards that several allegations of child care licensing rule violations had been substantiated during the investigation. The Wards disputed these allegations, claiming that the DFS investigator lied to them during the investigation and misrepresented the results of her investigation to DFS. After the Wards complained to various DFS employees up to and including the Director, DFS withdrew the allegations without having initiated any action against Kids' Connection's license or taken any other disciplinary steps.

The Wards sued several DFS employees involved in the investigation, claiming two violations of the Due Process Clause: first, that the DFS employees violated their procedural due process rights by refusing to grant them a full hearing regarding the disputed allegations; and second, that the DFS investigation was itself improper and inadequate and thus violated their substantive due process rights. The district court granted summary judgment for the defendants, holding that the Wards failed to demonstrate a "clearly established" constitutional violation to overcome the qualified immunity held by defendants as employees of a state agency.

Taking jurisdiction pursuant to 28 U.S.C. § 1291, we agree that the Wards' due process claims are without merit and therefore AFFIRM the grant of summary judgment to the DFS employees on grounds of qualified immunity.

## I.      Background

### A.      Factual History

The Wards are the owners, officers and directors of Kids' Connection, a child care center in Laramie, Wyoming. In May 2002, the Wards terminated a Kids' Connection employee for misconduct. The employee threatened to "ruin" Kids' Connection by complaining to DFS, a state administrative agency which licenses and regulates child care facilities. The employee followed through on this threat, and DFS initiated an investigation into Kids' Connection in summer 2002. Defendant Leslie Anderson, a licensor at DFS, conducted the investigation; defendants Susan McKellar and Beverly Campbell were Anderson's supervisors. Rodger McDaniel was Director of DFS.[1]

According to the Wards, Anderson's investigation was improperly conducted. They claim that Anderson "made deliberate misrepresentations in her investigative reports regarding what her investigation showed, that she lied in those reports, and that she made false verbal representations . . . about what she had found."

---

[1]Director McDaniel was named as a defendant in the original lawsuit. However, prior to the district court's grant of summary judgment, the Wards agreed to dismiss their claims against McDaniel.

DFS issued a "Notice of Conclusions" to the Wards in August 2002, which listed eleven allegations substantiated[2] by Anderson's investigation, including allegations that Kids' Connection staff were not caring for infants properly; that staff failed to stay in the room with children during nap time; that the Wards failed to maintain confidentiality when discussing staff members with parents and other staff members; that the Wards made false statements to the DFS investigator and instructed staff members to give similarly false and misleading statements; that paperwork regarding medication was not properly collected or maintained; and that the Wards failed to report allegations of suspected child abuse or neglect to DFS.

The Wards immediately contacted Susan McKellar, Anderson's supervisor, to dispute these substantiated allegations and to request a hearing. McKellar denied their request for a hearing, however, explaining that DFS was not taking any action against Kids' Connection's child care license and DFS regulations only require a hearing when action against a license is involved.

In September 2002, DFS issued a second "Notice of Conclusions" containing substantiated allegations very similar to the first. After receiving this

---

[2]"Substantiated allegations" are not defined under DFS regulations. However, "substantiated reports" are defined in the regulations as "any report[s] of child abuse or neglect or child care rules violation made to the Department in which it is determined, after an investigation, that a preponderance of evidence of the alleged abuse or neglect or violation exists." 049-185-002 Wyo. Code R. § 1(mm) (2002).

second notice, the Wards met in person with Anderson and McKellar to dispute the allegations and again requested a hearing. McKellar again denied the request because no DFS action against Kids' Connection's child care license was pending.

The Wards' attorney sent a letter to Director of DFS Rodger McDaniel in January 2003, again disputing the substantiated allegations and describing "in great detail the deficiencies, falsehoods, untruths, and all of the problems with [the DFS] investigation of Kids' Connection" and requesting a hearing. The Wards claim they received no response to this letter.

Finally, in May 2003, the Wards met with Beverly Campbell and Director McDaniel to discuss the investigation and the substantiated allegations. The Wards allege that, at this meeting, Campbell admitted that DFS had had problems with Anderson and that she no longer worked for DFS. At the conclusion of this meeting, the Wards were told that all the allegations previously substantiated against Kids' Connection were withdrawn. After the meeting, Director McDaniel sent a letter to the Wards indicating that no action against Kids' Connection's child care license would be forthcoming.

**B.    Procedural History**

The Wards' October 2004 complaint asserted three causes of action: first, that under 42 U.S.C. § 1983, Anderson's "wholly inadequate and improper"

investigation violated their Fifth Amendment right to due process[3]; second, also

under § 1983, that DFS's failure to provide a hearing violated their Fifth

Amendment right to due process; and third, that Anderson and DFS's actions

were malicious, reckless, or wantonly disregarded the Wards' rights and therefore

merited punitive damages.[4]

The complaint alleged that Anderson's investigation was inadequate; that

Anderson misrepresented her findings and made false allegations, "whether

intentionally or negligently," in the Notices of Conclusions; that McKellar

participated in the faulty investigation and failed to properly supervise or train

Anderson; and that Campbell failed to adequately train or supervise McKellar and

Anderson. The complaint also alleged, "on information and belief," that DFS

employees allowed the substantiated allegations to become public knowledge in

---

[3]Both parties and the district court refer to the Fifth Amendment as the source of the due process requirements discussed in this case. The Fifth Amendment, however, is technically not the source of the constitutional guarantees invoked by the Wards; only the Fourteenth Amendment imposes a due process requirement on state officials. See U.S. Const. Amend. XIV § 1 (". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). This error, however, does not affect our decision. See 16B Am. Jur. 2d Con. Law § 890 ("[T]he Due Process Clause of the Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Due Process Clause of the Fifth Amendment upon their federal counterparts.").

[4]The Wards' First Amended Complaint named the defendants "in their Official and Individual Capacities." In responding to the motion for summary judgment, the Wards agreed to dismiss all claims against the defendants in their official capacities, leaving only claims against Campbell, McKellar and Anderson in their individual capacities.

violation of DFS policy. As a result, the complaint alleged that the Wards suffered monetary losses and loss of standing and reputation.

The defendant DFS employees moved for summary judgment, contending that they were entitled to qualified immunity and that the Wards had failed to allege any "clearly established" constitutional violation. They argued that the Wards were not constitutionally entitled to an adequate investigation and, therefore, that the lack of such an investigation was not a violation of due process; that the Wards could not establish actual property damages from the alleged violations, but only damage to their reputation or future employment prospects; and that Wyoming state law did not require a hearing where DFS did not take any action against the Wards' child care license.

The district court granted the DFS employees' motion for summary judgment, holding that they were entitled to qualified immunity and that the Wards failed to provide evidence of any clearly established constitutional or statutory violation to overcome this immunity. The court construed the Wards' first claim as alleging a procedural due process violation based on the allegedly inadequate DFS investigation, but concluded that no constitutional right to an adequate investigation exists under the circumstances. The court also held that the Wards failed to establish that the DFS employees' actions deprived them of any property interest protected by due process, stating that "[n]o tangible consequences detrimental to the Wards in the actual operation of their business

ever flowed from the Notices of Conclusion . . . ." Finally, the court held that the Wards received sufficient opportunities to dispute the allegations substantiated by the DFS investigation and were not entitled to any more formal hearing procedures, since their license to operate was never in jeopardy. The court concluded that, since the Wards failed to raise a genuine issue of material fact as to the existence of any of the constitutional violations they alleged, the DFS employees as state officials were entitled to qualified immunity; thus, the court granted the DFS employees' motion for summary judgment. Appellants filed a timely notice of appeal.

## II.    Discussion

On appeal, the Wards advance two arguments that they contend were erroneously resolved by the district court on summary judgment: first, that the DFS employees violated their procedural due process rights by failing to provide them with a formal hearing; and second, that the DFS investigation was conducted so improperly as to "shock the conscience" and violate their substantive due

process rights.[5]  After addressing the proper standard of review, we consider each argument in turn below.

## A.      Standard of Review

"Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions."  Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc) (quoting Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)).

> When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right.  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  If, on the other hand, a violation has been shown, the plaintiff must then show that the constitutional right was clearly established.

---

[5]We treat the Wards' argument that the DFS investigation was improper and abusive as invoking substantive due process guarantees.  Neither the parties' briefs nor the district court's judgment denominated this argument as such; however, the "shocks the conscience" test relied upon by the Wards is the test for a substantive due process violation.  See Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006) ("The 'ultimate' standard for determining whether there has been a substantive due process violation is 'whether the challenged government action shocks the conscience of federal judges.'"); Ruiz v. McDonnell, 299 F.3d 1173, 1183 (10th Cir. 2002) (same); see also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) ("[T]he substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking in a constitutional sense.'").  At oral argument, counsel for the Wards agreed that they intended to bring both procedural and substantive due process claims.  We therefore construe their argument that Anderson's "egregious" behavior shocks the conscience as a substantive due process challenge.

. . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation . . . .

Id. (quotations, citations omitted). "If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant" to demonstrate that no material facts remain in dispute. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002).

"On appeal, we review the award of summary judgment based on qualified immunity de novo, considering all evidence in the light most favorable to the non-moving party. Summary judgment is appropriate if the record shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Trask v. Franco, 446 F.3d 1036, 1043 (10th Cir. 2006) (quotation, citation omitted).

**B.    The Wards' Procedural Due Process Claim**

In resolving a procedural due process claim, we generally "engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Kirkland v. St. Vrain Valley Sch. Dist., 464 F.3d 1182, 1189 (10th Cir. 2006) (quoting Brown v. N.M. State Pers. Office, 399 F.3d 1248, 1254 (10th Cir. 2005)). We find it unnecessary to address the first step of this inquiry here, however, because regardless of the injury claimed it is clear that

the Wards received sufficient process during and immediately following the DFS investigation.[6]

For reasons that are opaque to us, both parties focus their procedural due process arguments on the provisions of the Wyoming statutes and the DFS regulations that provide for hearings. They disagree whether the statutes and regulations require a hearing when, as in the instant case, the DFS does not plan to revoke or suspend a child care provider's license.[7] However, these arguments

_____

[6]The property interest invoked by the Wards — injury to existing business relationships — is generally sufficient to support a claim under procedural due process, contrary to the conclusion of the district court. See Corbitt v. Andersen, 778 F.2d 1471, 1475 (10th Cir. 1985) (holding that the plaintiff's burden to show a procedural due process injury was met with sufficient evidence from which the jury "could reasonably conclude that [defendant]'s actions weakened and devalued" his business); cf. Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1268 (10th Cir. 1989) (distinguishing Corbitt as applying only where "the plaintiff has alleged and presented evidence of present harm to his established business relationships," rather than "merely . . . alleg[ing] speculative future harm to prospective relationships as a result of generalized damage to his reputation").
    However, we agree with the district court's doubt as to whether the Wards presented sufficient evidence that the DFS investigation actually caused any injury to their relationships with day-care clients, especially given that counsel for the Wards conceded at oral argument that they had no concrete evidence beyond the Wards' own self-serving affidavits that any of their clients were aware of the DFS investigation or its conclusions. In any event, we need not decide this evidentiary question here as we hold that the Wards received adequate process even if a legitimate injury to a protected property interest was shown.

[7]In our reading, the statutes and regulations at issue here do not require the DFS to provide a hearing unless it intends to suspend, revoke or reject renewal of a child care provider's license. See Wyo. Stat. Ann. § 14-4-108 ("Thirty (30) days prior to initiating suspension, revocation or nonrenewal of any [child care facility certification], the certifying authority shall . . . provide the certified agency an opportunity to request a hearing with the board of review . . . ."); 049-

(continued...)

- 11 -

are a red herring; the question raised in a procedural due process challenge is whether the level of process afforded to the Wards passed constitutional muster, not whether DFS followed statutes or regulations. "[A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." Hennigh v. City of Shawnee, 155 F.3d 1249, 1256 (10th Cir. 1998) (quotation omitted); see Hulen v. Yates, 322 F.3d 1229, 1247 (10th Cir. 2003) ("[O]nce the property right is established, it is purely a matter of federal constitutional law whether the procedure afforded was adequate."); see also Levitt v. Univ. of Tex. at El Paso, 759 F.2d 1224, 1230 (5th Cir. 1985) ("[N]ot every violation by an agency of [its own] rules rises to the level of a due process claim." (quotation omitted)).

When assessing a procedural due process claim, this court looks to the three-factor balancing test articulated by the Supreme Court in Mathews v.

---

[7](...continued)
185-005 Wyo. Code R. § 2(d)(iii)(A) (2002) ("A hearing may be denied if the request for a hearing does not meet the definition of a contested case or if no adverse action has been taken by the Department against a person requesting the hearing."); 049-185-002 Wyo. Code R. § 1(o) (2002) ("'Contested case' means a proceeding, in which legal rights, duties or privileges of a party are required by law or regulation to be determined by the Department after an opportunity for hearing."). Thus, the regulations do not appear to require a hearing in this case, since DFS had not moved to suspend, revoke, or reject renewal of the Wards' license.

Eldridge, 424 U.S. 319, 334-35 (1976).  See Kirkland, 464 F.3d at 1192; Stanko v. Maher, 419 F.3d 1107, 1115-16 (10th Cir. 2005).  The three factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Stanko, 419 F.3d at 1115-16.  We have repeatedly emphasized the Supreme Court's admonition that the procedural due process analysis is "not a technical conception with a fixed content unrelated to time, place and circumstances," but rather "is flexible and calls for such procedural protections as the particular situation demands."  Kirkland, 464 F.3d at 1192 (quoting Gilbert v. Homar, 520 U.S. 924, 930 (1997)); United States v. Weed, 389 F.3d 1060, 1067 (10th Cir. 2004); United States v. Jones, 160 F.3d 641, 646 (10th Cir. 1998).

As to the first factor – impairment of the Wards' private interest – it seems self-evident that they have a significant interest in the health and success of their child-care business.  However, in this case, they were not deprived of their right to operate Kids' Connection; instead, they were only subject to the temporary anxiety and potential stigma of the substantiated allegations in the Notices of Conclusions, which were eventually withdrawn by DFS without any action having been taken against their license.  "[I]n determining what process is due, account

- 13 -

must be taken of the *length* and *finality* of the deprivation." Kirkland, 464 F.3d at 1192 (quoting Gilbert, 520 U.S. at 932). In Kirkland, we held that a suspended employee who was provided with prompt post-suspension review had a diminished interest in the damage to his employment because he had the opportunity to rectify the damage quickly. Id. at 1192-93 ("[A]lthough Kirkland has a private interest that will be affected by a suspension, that effect is attenuated by the relatively prompt post-suspension hearing that is provided."). Here, the Wards were similarly affected only for a relatively short period before the allegations against them were withdrawn. Although the Wards were under the cloud of the substantiated allegations for a longer period than Kirkland — approximately nine months, from the date of the first Notice of Conclusions through the Wards' final meeting with Director McDaniel where the allegations were officially withdrawn — this period was nonetheless temporary and, unlike Kirkland, their ability to run their business and earn income was never suspended. Thus, their private interest, though significant, is attenuated.

The second Mathews factor — the risk of error in the procedure provided — is minimized here by the fact that the Wards took advantage of ample opportunities to alert DFS employees of their concerns before any action was taken against their license. The Wards freely admit that their complaints about DFS's allegedly improper investigation were heard by several DFS employees, up

to and including the Director of DFS.[8]  The availability of such review by additional employees reduces the likelihood of an erroneous deprivation of a property interest by the government.  Kirkland, 464 F.3d at 1193.  The fact that DFS employees concluded that the allegations should not have been substantiated and agreed to withdraw them is strong evidence that the system, in this case, worked as it was supposed to in preventing the erroneous suspension or revocation of a child care provider's license.[9]

---

[8]There is some indication in the record that the Wards also met with the Governor of Wyoming for approximately one hour on February 20, 2003, regarding the DFS investigation.  However, the record is unclear as to what transpired at this meeting and what the Governor's response was, if any.

[9]Indeed, a strong argument can be made that the Wards actually received hearings from DFS at several points.  On October 18, 2002, the Wards met with DFS employees McKellar and Anderson to dispute the investigation's findings, presenting their allegations that the investigation was improper and abusive.  On January 20, 2003, the Wards' attorney sent a letter to the Director of DFS which "described in great detail the deficiencies, inaccuracies, and problems with [DFS's] investigation of Kids' Connection."  Then, on May 5, 2003, the Wards again met with DFS employees – this time including the Director of DFS, Rodger McDaniel – to "discuss all of the problems with the DFS investigation of Kids' Connection."  This meeting apparently produced the desired result: "At the conclusion of this meeting, [the Wards] were told that all the allegations that had previously been substantiated against Kids' Connection were withdrawn."

These meetings and letters complied with "[t]he essential requirements of due process," which the Supreme Court has described as "notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also Jones, 160 F.3d at 645 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)).  The Wards received notice of the results of the investigation and responded to the DFS on multiple occasions, communicating

(continued...)

- 15 -

Finally, the third factor – the strength of the government's interest – supports the process utilized in this case. The government has a strong interest in acting quickly and efficiently to investigate where public health and safety are concerned, even if doing so creates a greater risk of mistakes. See Camuglia v. City of Albuquerque, 448 F.3d 1214, 1220 (10th Cir. 2006) ("In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly. Quick action may turn out to be wrongful action, but due process requires only a postdeprivation opportunity to establish the error."). In particular, we have recognized that the government has a "compelling interest" in the "safety and welfare of its children." J.B. v. Washington County, 127 F.3d 919, 925 (10th Cir. 1997) ("[C]onsiderable deference should be given to the judgment of responsible government officials in acting to protect children from perceived imminent danger or abuse."). DFS in this case investigated Kids' Connection for the purpose of protecting children. See 049-185-001 Wyo. Code R. § 2 (2002) (describing the purpose of DFS regulations as being "for the protection of children in child care facilities"). Requiring DFS to conduct a full-scale formal hearing prior even to notifying a provider that allegations from a complaint have been substantiated would clearly interfere with DFS's ability to

[9](...continued)
their dissatisfaction and achieving a resolution which prevented any action being taken against their license, a procedure which satisfies the requirements of due process.

- 16 -

act quickly to protect the public from facilities that endanger the health or welfare of children.

In sum, the Mathews factors counsel against finding a procedural due process violation based on the DFS employees' refusal to provide a formal hearing, especially given that the Wards did, in fact, take advantage of ample opportunities to contest the allegations against them. Having failed to establish a constitutional violation, the Wards' procedural due process claim founders on the first step of the qualified immunity analysis. As a result, we affirm the district court's grant of summary judgment to the DFS employees on procedural due process grounds and proceed to consider the Wards' remaining claim of a substantive due process violation.

## C. The Wards' Substantive Due Process Claim

The "ultimate standard" for assessing an alleged violation of substantive due process is "whether the challenged government action shocks the conscience of federal judges."[10] Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006) (quotation omitted); see also Camuglia, 448 F.3d at 1222; Clark v. City of Draper, 168 F.3d 1185, 1190 (10th Cir. 1999); Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995). This standard is not an easy one for a plaintiff to satisfy:

---

[10]Once again, we need not address whether the Wards have alleged the type of interest that triggers a substantive due process claim because, regardless of the interest at issue, we hold that the DFS investigation does not "shock the conscience" and therefore cannot support a substantive due process violation.

> It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness.

Camuglia, 448 F.3d at 1222-23 (quotations, citations, alterations omitted).

The Wards here allege the following as demonstrating the DFS employees' "improper, reckless, and intentional bad acts":

> A. Defendant Anderson never interviewed Plaintiffs Beth and Bryan Ward about the allegations that she was assigned to investigate by Defendant DFS.
> B. Defendant Anderson interviewed employees of Kids' Connection, but later misrepresented what those employees stated to her in the course of her "investigation" and interviews.
> C. Defendant Anderson made false allegations, whether intentionally or negligently, in the Notices of Conclusion . . . .
> D. Anderson falsely stated to the Plaintiffs, whether intentionally or negligently, numerous significant and material facts about her "investigation"; and what she ostensibly learned in her "investigation" about Kids' Connection, Plaintiffs Beth and Bryan Ward, and the employees of Kids' Connection.

In addition, the Wards allege that Defendants McKellar and Campbell "directly participated" in the investigation, but failed to supervise and train Anderson or to correct the improper investigation. Thus, the Wards' substantive due process claim rests on allegations that Anderson failed to interview them and

- 18 -

misrepresented what she learned from the investigation, and that her supervisors failed to correct these problems.

It is well established that substantive due process protections extend only to "deliberately wrongful government decisions rather than merely negligent government conduct." Uhlrig, 64 F.3d at 573; see Moore, 438 F.3d at 1040 ("[N]egligence is not sufficient to shock the conscience."). The Wards, however, make clear in their opening brief that they are uncertain as to whether the improper conduct they attribute to the DFS employees was intentional or merely negligent. This ambivalence as to the DFS employees' motivations is reflected in the evidence, which contains no proof, or even grounds for a reasonable inference, that Anderson, McKellar or Campbell intended to cause the Wards harm or to place them unreasonably at risk of harm. See Uhlrig, 64 F.3d at 573 (holding that a § 1983 violation based on substantive due process "must be predicated on a state action manifesting one of two traditional forms of wrongful intent — that is, either (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm").

Instead, viewed in a light most favorable to the Wards, the evidence establishes only that Anderson investigated Kids' Connection as a result of a complaint to DFS from a disgruntled former employee; that Anderson made statements to the Wards and reported violations of child care regulations to DFS, some of which may have been inaccurate; that these substantiated allegations

were described in Notices of Conclusions, which were sent to the Wards and may have been available to interested members of the public; and that DFS, after repeated protests and receipt of evidence and argument from the Wards, dropped the investigation and withdrew the allegations against them.

These facts simply do not allege conduct that shocks the conscience. We recently had occasion to consider similar allegations by a restaurant owner against a state health inspector, alleging that the inspector's decision to temporarily close the restaurant due to reported health code violations was "intentional, wilful and wanton and meant to deprive [the owner] of property rights." Camuglia, 448 F.3d at 1217. We held that these allegations were insufficient to allow a substantive due process claim to survive summary judgment without actual evidence of malicious intent or extreme arbitrariness that is "truly conscience shocking," noting that "the Due Process Clause 'is not a guarantee against incorrect or ill-advised [government] decisions.'" Id. at 1222-23 (quoting Uhlrig, 64 F.3d at 573, 574).

We find no principled basis for distinguishing the evidence in this case from that which we rejected in Camuglia. The Wards allege that DFS conducted an improper and inadequate investigation, but provide no evidence that this conduct was so intentional or reckless as to "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly

conscience shocking."[11] Id. Thus, we hold that the Wards have not carried their burden to allege a constitutional violation of substantive due process, causing their second claim to fail at the first step of the qualified immunity analysis. We therefore affirm the district court's grant of summary judgment to the DFS employees as to this claim as well.

## III. Conclusion

For the foregoing reasons, we hold that the Wards failed to demonstrate a violation of either procedural or substantive due process and that the DFS employees are entitled to qualified immunity. We therefore AFFIRM the district court's grant of summary judgment in favor of the DFS employees.

---

[11]We noted in Camuglia that public disclosure of damaging information from an investigation does not provide evidence of conscience-shocking conduct where such disclosure is required by a local ordinance and is therefore "a routine part" of the investigator's job. 448 F.3d at 1223. The same observation applies here, since the public availability of information regarding a DFS complaint investigation is mandated by regulation. 049-185-006 Wyo. Code R. § 10(c) (2002) ("Any person who files a request . . . may review complaint investigations dealing with non-child protection issues completed by the Department of Family Services.").