FILED
United States Court of Appeals
Tenth Circuit

July 9, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MUSCOGEE (CREEK) NATION,

     Plaintiff-Appellant,

v.

OKLAHOMA TAX COMMISSION;
THOMAS E. KEMP, JR., Chairman
of the Tax Commission; JERRY
JOHNSON, Vice-Chairman of the
Tax Commission; CONSTANCE
IRBY, Secretary of the Tax
Commission,

     Defendants-Appellees.

No. 09-5123

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:09-CV-00285-TCK-TLW)**

---

Michael Minnis (W. David McCullough of Doerner, Saunders, Daniel & Anderson, LLP and Roger Wiley, Muscogee (Creek) Nation Attorney General, with him on the brief), of Doerner, Saunders, Daniel & Anderson, LLP, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Larry Patton, Assistant General Counsel (Douglas B. Allen, General Counsel, with him on the brief), Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **BRISCOE** Chief Judge, **BALDOCK**, and **GORSUCH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

Under Oklahoma law, "[a]ll unstamped cigarettes . . . found in the possession . . . of any person, for the purpose of being . . . transported from one place to another in this state, for the purpose of evading . . . the provisions of [the Cigarette Stamp Tax Act] . . . may be seized by any authorized agent of the Tax Commission . . . , without process." 68 Okla. Stat. § 305.E.1. These contraband cigarettes "shall be, from the time of such seizure, forfeited to the State of Oklahoma" subject to "a proper proceeding." Id. Similarly, "all unstamped cigarettes sold or shipped to tribally owned or licensed stores in this state by wholesalers . . . not licensed by this state . . . for the purpose of selling or consuming unstamped cigarettes in this state in violation of [the Sale of Cigarettes at Tribally Owned or Licensed Stores Act] shall be subject to seizure of the shipments and forfeiture of the inventory pursuant to the provisions of [68 Okla. Stat. § 305]." Id. § 351.A. In support of the latter provision, Oklahoma law authorizes "[a]ny peace officer of this state . . . to stop any vehicle upon any road or highway of this state in order to inspect the bill of lading or to take such action as may be necessary to determine if unstamped cigarettes are being sold or shipped in violation of the provisions of this section." Id. § 351.B. In conducting these inspections, "[s]uch officers shall . . . have a duty to cooperate with the Oklahoma Tax Commission to enforce the provisions of this act." Id. Purportedly suspicious that Muscogee Creek Nation (MCN) was supplying off-reservation Oklahoma smoke shops with unstamped cigarettes, the Oklahoma Tax Commission (OTC), pursuant to the foregoing provisions, directed the state

2

highway patrol to stop MCN's vehicles on public thoroughfares outside Indian country and inspect their lading. Following inspection and search of the vehicles, OTC agents were summoned to seize any cigarettes failing to bear a tax stamp. Over the course of three stops (only two of which uncovered suspected contraband), OTC seized unstamped cigarettes purportedly worth $107,000. Objecting to OTC's interference with MCN's vehicles and their lading, MCN filed suit.

## I.

Specifically, MCN filed suit against both OTC and its Tax Commissioners, the latter in their official capacities: "The individual Defendants are sued in their official capacities as officers of the OTC charged with enforcement of Oklahoma tax laws." MCN asserted jurisdiction under 28 U.S.C. § 1362, which provides: "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe . . . wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." At the outset of its amended complaint, MCN "complains of Defendants for causing Plaintiff's trucks to be illegally stopped, illegally searched, and for illegally seizing Plaintiff's property." Consistent therewith, Count I of MCN's amended complaint–the complaint's only substantively labeled count–alleged a violation of MCN's civil rights pursuant to 28 U.S.C. § 1983, specifically that OTC and its Commissioners' conduct denied MCN due process of law and "deprived [MCN] of rights protected by the Fourth and Fourteenth Amendment to be free from unreasonable searches and seizures." The

3

remaining counts of MCN's amended complaint sought only remedial relief and were so labeled. Count II sought a declaratory judgment that OTC's stops and searches of MCN's vehicles and seizures of their lading were unlawful. Count III sought a prohibitory injunction directing OTC to cease interfering with MCN's vehicles and their lading. Count IV requested mandatory injunctive relief directing the return of the seized cigarettes. Count V, in the alternative, sought damages to compensate MCN for the monetary value of the cigarettes.

In a thorough order, the district court granted OTC and its Commissioners' Rule 12(b) motion and dismissed MCN's amended complaint in its entirety. As to OTC, the court dismissed the complaint for want of subject matter jurisdiction based on OTC's defense of sovereign immunity. See Republic of Austria v. Altmann, 541 U.S. 677, 700 (2004) (recognizing a claim of sovereign immunity "raises a jurisdictional defense"). The court rejected MCN's argument that in enacting § 1362 Congress abrogated OTC's Eleventh Amendment immunity. As to MCN's official capacity suit against the Commissioners, the district court concluded that, despite the Eleventh Amendment bar, it possessed subject matter jurisdiction under the fiction of Ex parte Young, 209 U.S. 123 (1908), but only to the extent that Counts II and III of MCN's amended complaint sought prospective relief in the form of a declaratory judgment and prohibitory injunction. The court held, however, that such relief was unavailable to MCN because its § 1983 claim, upon which those (and all other) counts depended, failed to state a cause of action. The court reasoned that because

4

MCN's claim to relief as alleged in the complaint depended on its sovereign status, MCN did not constitute a "person" entitled to maintain suit under § 1983.

MCN appeals the district court's judgment, challenging each of the court's adverse determinations. Our jurisdiction arises under 28 U.S.C. § 1291. Our review of the district court's dismissal of MCN's amended complaint, for lack of subject matter jurisdiction and for failure to state a claim respectively, is de novo.[1] See Kane County Utah v. Salazar, 562 F.3d 1077, 1085 (10th Cir. 2009). In ascertaining the sufficiency of MCN's pleading, we accept its well-pleaded factual allegations as true. See Smith v. United States, 561 F.3d 1090, 1097–98 (10th Cir. 2009). But we need not accept its unsupported conclusory allegations. See Hackwell v. United States, 491 F.3d 1229, 1233 (10th Cir. 2007). Mindful of the applicable standards, we now address the sufficiency of MCN's amended complaint, and affirm.

## II.

The Supreme Court has interpreted the Eleventh Amendment to mean "States may not be sued in federal court unless they consent to it in unequivocal terms or

---

[1] A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may take one of two forms. A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction. A factual attack goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction. See Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001). While neither the parties nor the district court identified it as such, we construe OTC and the Commissioners' motion as a facial challenge based on our reading of the district court's dispositive order as limited to the four corners of MCN's amended complaint. As such, we apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action.

5

unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). This prohibition encompasses suits against state agencies. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). Suits against state officials acting in their official capacities similarly fall within the amendment's proscription because "a suit against a state official in his or her official capacity . . . is no different than a suit against the State itself." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). Because § 1983 does not abrogate a state's sovereign immunity, see Quern v. Jordan, 440 U.S. 332, 338–40 (1979), and Oklahoma has not consented to MCN's suit against OTC and its Commissioners in their official capacities, we first address whether MCN can establish that Congress abrogated OTC and its Commissioners' immunity through enactment of § 1362.[2] See Sydnes v. United States, 523 F.3d 1179, 1183 (10th Cir. 2008) (noting the party asserting jurisdiction has the burden of overcoming a sovereign immunity defense).[3]

---

[2] "While 28 U.S.C. § 1331 grants [federal] court jurisdiction over all 'civil actions arising under the Constitution, laws or treaties of the United States,' it does not independently waive the Government's sovereign immunity; § 1331 will only confer subject matter jurisdiction where some other statute provides such a waiver." High Country Citizens Alliance v. Clarke, 454 F.3d 1177, 1181 (10th Cir. 2006).

[3] On appeal, MCN argues for the first time in its reply brief that 68 Okla. Stat. § 226, which provides a right of action to an aggrieved taxpayer against the State under defined circumstances, constitutes a waiver of OTC's sovereign immunity in the context of this case. Absent exceptional circumstance, however, we do not consider arguments raised for the first time in a reply brief, and will not do so here. As we explained in Hill v. Kemp, 478 F.3d 1236, 1251 (10th Cir. 2007) (internal quotations and ellipses omitted):

(continued...)

6

A.

In <u>Blatchford v. Native Village</u>, 501 U.S. 775 (1991), the Supreme Court held § 1362 did not foreclose a state official's sovereign immunity defense to a tribe's suit challenging implementation of a state revenue-sharing statute. The Court opined that "§ 1362 does not reflect an unmistakably clear intent to abrogate immunity, made plain in the language of the statute." <u>Blatchford</u>, 501 U.S. at 786 (internal quotations omitted). And "the fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim." <u>Id.</u> at 786 n.4 (emphasis omitted). The Court further rejected the proposition that "§ 1362 represents not an abrogation of the State's sovereign immunity, but rather a delegation to tribes of the Federal Government's exemption from state sovereign immunity." <u>Id.</u> at 785 (emphasis omitted). The Court reasoned: "Assuming that delegation of exemption from state sovereign immunity is theoretically possible, there is no reason to believe that Congress [in enacting § 1362] ever contemplated such a strange notion." <u>Id.</u> at 785–86. MCN all but ignores <u>Blatchford</u> (only mentioning it in passing in its reply brief), and instead relies on our decision in <u>Sac</u>

---

[3](...continued)

[T]he reasons for our rule are two-fold: First, to allow an appellant to raise new arguments at this juncture would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response. Secondly, it would also be unfair to the court itself, which, without the benefit of a response from appellee to an appellant's late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence . . . on the adversarial process for sharpening the issues for decision.

& Fox Nation v. Pierce, 213 F.3d 566 (10th Cir. 2000), to support its argument that the Eleventh Amendment does not proscribe this action against OTC and its Commissioners. MCN, however, reads Pierce far too broadly and fails to account for the substantial narrowing effect Blatchford has upon our holding in that case.

In Pierce, we relied on the Supreme Court's decision in Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463 (1976), "a case involving an Indian tribe's access to federal court 'for the purpose of obtaining injunctive relief from state taxation,'" to hold the Eleventh Amendment did not bar an Indian tribe's suit against a state official to enjoin the State of Kansas from collecting taxes on motor fuel distributed to the tribes' retail stations within Indian country. Pierce, 213 F.3d at 571 (quoting Blatchford, 501 U.S. at 784); see also Winnebago Tribe v. Stovall, 341 F.3d 1202, 1207 (10th Cir. 2003) (relying on Pierce to hold the Eleventh Amendment did not bar a tribe's suit against a state official to enjoin a fuel tax assessment on a corporation owned by the tribe and transacting business within Indian country). Most certainly, Blatchford noted the jurisdictional defense of Eleventh Amendment immunity was not at issue in Moe, and Moe did not *hold* that § 1362 eliminated the constitutional bar of sovereign immunity. Blatchford, 501 U.S. at 785 n.3. Rather, in Moe the State of Montana posed only the Tax Injunction Act as a jurisdictional defense to the complaint. See 28 U.S.C. § 1341. Blatchford pointed out that "[a] willingness to eliminate [a congressional obstacle to suit] in no way bespeaks a willingness to eliminate [a constitutional impediment to suit]." Blatchford, 501 U.S.

8

at 785. Nonetheless, in analyzing § 1362, the Court in Moe reasoned that "Congress contemplated that a tribe's access to federal court to litigate a matter arising 'under the Constitution, laws, or treaties' would be at least in some respects as broad as that of the United States suing as the tribe's trustee." Moe, 425 U.S. at 473. The Court based its view on the legislative history of § 1362 in which the House Judiciary Committee characterized § 1362 "as providing 'the means whereby the tribes are assured of the same judicial determination whether the action is brought in their behalf by the Government or by their own attorneys.'" Id. at 472–73 (quoting H.R. Rep. No. 2040 (1966), reprinted in 1966 U.S.C.C.A.N. 3145, 3147).

Plainly, sovereign immunity would not have barred the United States acting as the tribe's trustee from suing Pierce in her official capacity, the equivalent of suing the state itself. See United States v. Mississippi, 380 U.S. 128, 140–41 (1965) (recognizing the Eleventh Amendment does not bar the United States from suing a state). Reason suggested that neither should sovereign immunity bar the tribe from suing Pierce if, as Moe said, the tribe "at least in some respects" was "'assured of the same judicial determination'" when suing on its own behalf under § 1362. Moe, 425 U.S. at 472–73. Cardinal to our decision in Pierce was Blatchford's observation that "*[t]he 'respect' at issue in Moe was access to federal court for the purpose of obtaining injunctive relief from state taxation*"–the very "'respect' at issue" in Pierce. Blatchford, 701 U.S. at 784 (emphasis added). Based on the sweep of Moe's language in respect to a tribe's suit to enjoin state taxation within Indian country, we

9

opined: "Surely if an Indian tribe may maintain suit on its own behalf in federal court to enjoin collection of a state's cigarette sales tax, it may maintain a similar suit on its own behalf to enjoin collection of a state's motor fuel distribution tax." Pierce, 213 F.3d at 572. But that is as far as Pierce went.

Neither Moe nor Pierce may be read to stand for the proposition that § 1362 provides an Indian tribe access to federal court identical to that of the United States *in all respects*. Blatchford makes this painfully apparent. See Osage Nation v. Oklahoma ex rel. Oklahoma Tax Comm'n, 2007 WL 4553668, at **3–**5 (10th Cir. 2007) (unpublished).[4] Pierce certainly recognized that providing the tribe access to federal court via § 1362 to seek injunctive relief from state taxation within

_____

[4] In Osage Nation, the tribe sued OTC and its Commissioners in their official capacities to enjoin assessment of the state's income tax on tribal members who were employed by the tribe but resided in Osage County. In rejecting the tribe's reliance on Pierce to argue § 1362 abrogated defendants' Eleventh Amendment immunity, the panel explained:

> [Pierce] does not speak to the real issue in this case, which is not whether the State's income tax is proper. While the Nation claims to be seeking only injunctive relief from state taxation, the essence of this case is whether the Nation or the State of Oklahoma is the supreme sovereign with respect to Osage County or whether some form of dual sovereignty may apply. . . . Whether the non-trust portions of Osage County are Indian country is a question of jurisdiction, not of tax, and the relief the Nation seeks is to divest Oklahoma of sovereign rights, not simply to enjoin a tax. Because this suit is not a mere tax injunction suit, [Pierce] is not controlling. Rather, we must look to the principle announced in Blatchford – that 28 U.S.C. § 1362 does not override the State's Eleventh Amendment immunity.

Osage Nation, 2007 WL 4553668, at **4 (internal footnote omitted).

10

Indian country was consonant not only with Moe, but also with the Supreme Court's "unique Indian tax immunity jurisprudence," a jurisprudence that "relies heavily on the doctrine of tribal sovereignty which historically gave state law no role to play *within a tribe's territorial boundaries*." Wagnon v. Prairie Band Potawatomi Nation, 546 U.S. 95, 112 (2005) (emphasis added) (internal quotations and ellipses omitted). But neither Moe nor Pierce purported to say "that § 1362 equated tribal access with the United States' access *generally*, but only 'at least in some respects.'" Blatchford, 501 U.S. at 784. MCN "urges us, in effect, to eliminate this limitation utterly." Id. Even *if* we were so inclined, we are powerless to do so given Blatchford.[5]

B.

Our decision in Pierce simply does not apply here because MCN's amended complaint, even under a generous reading, does not seek to enjoin state taxation "within the tribe's territorial boundaries." Wagnon, 546 U.S. at 112. Rather,

_____

[5] We acknowledge the view expressed by the panel in Osage Nation, 2007 WL 4553668, at **4 n.7, that given Blatchford's discussion of Moe, the latter "*may* stand only for the limited proposition that, where a state has waived its sovereign immunity, the Tax Injunction Act does not bar a tribe's suit against the state in federal court because jurisdiction is conferred under § 1362." (emphasis added). Nonetheless, Pierce's reading of Moe and Blatchford in tandem, as we have explained, is not without justification in the context of an Indian tribe's suit to enjoin state taxation within Indian country, and remains the law of this circuit absent en banc review or a superceding Supreme Court decision. See Mendiola v. Holder, 585 F.3d 1303, 1310 (10th Cir. 2009), petition for cert. filed, No. 09-1378 (May 12, 2010) ("[T]he precedent of prior panels which we must follow includes not only the very narrow holdings of those prior cases, but also the reasoning underlying those holdings, particularly when such reasoning articulates a point of law." (internal quotations and brackets omitted)).

11

MCN's amended complaint seeks ultimately to impugn, as contrary to the Fourth Amendment, OTC's stops and searches of MCN's vehicles and seizures of their lading outside the Tribe's territorial boundaries. MCN's amended complaint most assuredly does not *request* the district court to adjudicate the validity of Oklahoma's cigarette tax as applied to MCN's lading.[6] Paragraph 8 of the amended complaint states but a truism: "The Nation's right to engage in Indian commerce includes purchasing tobacco products manufactured by Indian tribes in Indian country that are then transported to The Nation's Indian country." Paragraph 10 then claims nothing less for MCN outside Indian country than a blanket exemption from Oklahoma's cigarette tax enforcement scheme because "[t]obacco products being moved between the Nation's Indian country are not subject to state taxation nor properly considered as 'contraband.'" Paragraph 29 posits: "The OTC's attempt to exercise taxing and civil authority against The Nation violates The Nation's sovereign immunity and impermissibly burdens Indian commerce in violation of the Constitution."[7] All this adds up to the gravamen of MCN's amended complaint, namely MCN's Fourth Amendment claim that OTC and its Commissioners are acting unreasonably in interfering with MCN's vehicles while those vehicles are in transit

---

[6] Notably, OTC and its Commissioners' counsel stated at oral argument that they were not asking us to reconsider <u>Pierce</u> for the reason that it has no application to this case.

[7] Any suggestion that Article I's Indian Commerce Clause, U.S. Const. art. I, § 8, abrogates OTC and its Commissioners' sovereign immunity is misplaced. In <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 72–73 (1996), the Court held Congress lacks power under Article I to abrogate a state's sovereign immunity.

12

between Indian country.  Paragraphs 36 and 41, a part of the declaratory judgment and prohibitory injunction counts respectively, assert:  "OTC cannot lawfully *stop* vehicles owned by the Nation without probable cause to believe a crime has been committed nor *search* The Nation's property without a properly-executed search warrant or permission of The Nation, nor *seize* The Nation's property while traveling in Indian commerce."  (emphasis added).

Though MCN's pleading is hardly a model of clarity, its theory of the case *as set out within the four corners of its amended complaint* is, as best we can discern, this:  MCN-owned cigarettes in transit between Indian country are not subject to the State of Oklahoma's tax enforcement scheme because that scheme interferes with Indian commerce; therefore OTC's searches of MCN's vehicles and seizures of their lading absent probable cause constitute a violation of the Fourth Amendment's reasonableness requirement redressable pursuant to § 1983.  MCN, in effect, seeks to render nugatory, via the Fourth Amendment, the state's cigarette tax enforcement scheme as an affront to Indian sovereignty.  This is precisely what MCN tells us on page fifteen of its opening brief:

> As the Amended Complaint makes clear, this is not just an action seeking to enjoin the state from civil rights violations, but also an action to enjoin the State from continuing its tax scheme which seeks to impose a tax on the Creeks by simply seizing Creek property.  Such stops, searches, and seizures unduly burden Indian commerce and wrongfully interfere with the Creek's sovereignty.[8]

---

[8] Nowhere in its amended complaint does MCN expressly request injunctive

(continued...)

13

But MCN's approach sounds the death knell of MCN's amended complaint as to OTC and its Commissioners sued in their official capacities because Blatchford tells us § 1362 does not constitute a general waiver of the State of Oklahoma's sovereign immunity and any limited waiver based on Pierce does not extend beyond an Indian tribe's direct challenge, sufficiently alleged in a complaint, to the imposition of a state tax within Indian country.  The district court was quite correct in deciding the Eleventh Amendment bars MCN's action against OTC and its Commissioners sued in their official capacities.  That is the end of our jurisdictional inquiry as to OTC.  See Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." (internal quotations omitted)).  As to OTC's Tax Commissioners, however, we must look beyond the foregoing Eleventh Amendment analysis to determine whether the fiction first recognized in Ex parte Young, 209 U.S. 123 (1908) serves, at least for the moment, to salvage any aspect of MCN's suit.

---

[8](...continued)
relief from Oklahoma's cigarette tax enforcement scheme.  In its reply brief, MCN acknowledges in footnote 1 that its challenge to the taxing scheme is indirect: "[T]he Creek are also challenging the district court construction of these statutes and, if necessary, their constitutionality.  However, the Creek statutory challenge is indirect.  It is not the focus of the Amended Complaint."  Of course, because no such challenges appear in the amended complaint, they are of no concern to us in adjudicating the complaint's sufficiency.

14

III.

In Young, the Supreme Court held the Eleventh Amendment did not bar an

action by railroad stockholders against a state attorney general sued in his official

capacity to enjoin an ongoing violation of federal law:

> If the act which the state [official] seeks to enforce be a violation of the
> Federal Constitution, the officer in proceeding under such enactment
> comes into conflict with the superior authority of that Constitution,
> and he is in that case stripped of his official or representative character
> and is subjected in his person to the consequences of his individual
> conduct.  The State has no power to impart to him any immunity from
> responsibility to the supreme authority of the United States.

Young, 209 U.S. at 159–60.  In Hill v. Kemp, 478 F.3d 1236, 1255–59 (10th Cir.

2007), we carefully considered the rationale behind and subsequent history of Young

as reflected in a century of Supreme Court jurisprudence.  We need not repeat that

here.  Suffice to say that today, "[i]n determining whether the doctrine of Young

avoids an Eleventh Amendment bar [to suit against state officers sued in their

official capacities], a court need only conduct a 'straightforward inquiry into whether

the complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective.'"  Verizon Maryland Inc. v. Pub. Serv. Comm'n, 535

U.S. 635, 645 (2002) (internal brackets omitted) (quoting Idaho v. Coeur d'Alene

Tribe, 521 U.S. 261, 296 (1997) (plurality) (O'Connor, J., concurring in part)).  In

Verizon, the Court held the Eleventh Amendment did not bar a telecommunication

carrier's federal claim for prospective declaratory and injunctive relief against the

state utility commission because "no past liability of the State, or of any of its

15

commissioners, is at issue": "[Verizon's] prayer for injunctive relief – that state officials be restrained from enforcing an order in contravention of controlling federal law – clearly satisfies our 'straightforward inquiry.' . . . Insofar as the exposure of the State is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction." Id. at 645–46.

Here, Count III of MCN's amended complaint "requests a preliminary and permanent injunction restraining OTC from *further* interference with Indian commerce." (emphasis added). Count III easily satisfies Verizon's "'straightforward inquiry.'" That count seeks a judgment, based on an ongoing violation of federal law, that OTC, and necessarily its Commissioners, may not henceforth employ Oklahoma's cigarette tax enforcement scheme to interfere with MCN's vehicles. MCN's prayer for declaratory relief contained in Count II "adds nothing" to the state's exposure because it too asserts an ongoing violation of federal law and asks for a declaration that OTC's interference with MCN's vehicles is unlawful. The district court properly applied the fiction of Young and exercised subject matter jurisdiction over MCN's § 1983 claim contained in Count I as against the Commissioners to the extent that claim, by way of Counts II and III, sought prospective relief based on an ongoing violation of federal law.[9]

---

[9] Part III of our opinion raises the question of why in Pierce we did not simply rely on Young to hold the tribe's suit for prospective injunctive relief could proceed against Pierce in her official capacity. See Pierce, 213 F.3d at 573 n.3 ("Because we conclude that we have jurisdiction to reach the merits of this case under 28 U.S.C.

(continued...)

16

Counts IV and V of MCN's amended complaint, however, are of a different ilk. Those counts, which respectively request return of the seized cigarettes or, in the alternative, their monetary value, undoubtedly bring into issue the past liability of OTC's Commissioners, and thus seek retrospective relief. When a state official is sued in his or her official capacity, the Eleventh Amendment bars retrospective relief, usually in the form of money damages, because any such judgment is deemed

[9](...continued)
§ 1362, we decline to address the question of Ex parte Young's application to matters of state taxation affecting Indian tribes."). The answer is that Young's application was not so straightforward at the time we decided Pierce. See Hill, 478 F.3d at 1258. The Supreme Court had not yet decided Verizon. Rather, the Court's most recent pronouncement regarding Young's application was its highly fractured plurality opinion in Coeur d'Alene, wherein, according to Justice O'Connor, "the principal opinion lays the groundwork for its central conclusion: that a case-by-case balancing approach is appropriate where a plaintiff invokes the Young exception to the Eleventh Amendment's jurisdictional bar, even when a complaint clearly alleges a violation of federal law and clearly seeks prospective relief." Coeur d'Alene, 521 U.S. at 293–94 (O'Connor, J., concurring in part). In Coeur d'Alene:

> The principal opinion reasons that federal courts determining whether to exercise jurisdiction over any suit against a state officer must engage in a case-specific analysis of a number of concerns, including whether a state forum is available to hear the dispute, what particular federal right the suit implicates, and whether "special factors counsel hesitation" in the exercise of jurisdiction.

Id. at 291 (O'Connor, J., concurring in part) (internal brackets omitted). The Court in Verizon subsequently adopted Justice O'Connor's view of Young as presenting a much simpler inquiry than that proposed by the principal opinion in Coeur d'Alene. See Hill, 478 F.3d at 1258–59. That we might have applied Young's fiction to circumvent the Eleventh Amendment bar in Pierce seems plain today. Such application was not nearly so plain then as it is now. See, e.g., Winnebago Tribe, 341 F.3d at 1207 (relying post Verizon on Young as an alternative to Pierce in rejecting a state official's sovereign immunity defense in a tax injunction suit).

directed at the state as the real party in interest rather than the nominal officer.  See

Edelman v. Jordan, 415 U.S. 651, 664–71 (1974) (holding the Eleventh Amendment

barred the retroactive payment of state benefits wrongfully withheld).  Here, the

Oklahoma state treasury would be bound to satisfy any judgment directing the

Commissioners in their official capacities to tender MCN the monetary value of the

seized cigarettes, and thus, Count V does not avoid the Eleventh Amendment bar.

While MCN's request for return of the seized cigarettes presents a somewhat

different question given a judgment on Count IV directing OTC to return the

cigarettes would not directly impact the state's treasury, neither can that count meet

Verizon's "'straightforward inquiry'" because the relief it seeks most assuredly

cannot be characterized as prospective.[10]  The district court therefore properly

---

[10]  We are cognizant of Fla. Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670 (1982) (plurality), a decision cited by neither party, where a plurality of the Court decided a federal court was empowered to issue a warrant commanding state officials to release artifacts to the claimant because the suit was not really a suit against the state.  Importantly, however –

> The plurality's conclusion that the suit was not against the State was based on its view that state officials lacked any colorable basis under *state* law for claiming rightful possession of the artifacts.  Put another way, the plurality in Treasure Salvors would have permitted the suit to proceed not because the plaintiff's claim of title arguably rested on federal law, but because state officials were acting beyond the authority conferred on them by the State, quite apart from whether their conduct also violated federal law.

Coeur d'Alene, 521 U.S. at 289–90 (O'Connor, J., concurring in part) (internal citations omitted).  Here, MCN does not claim OTC and its Commissioners were acting beyond the authority conferred upon them by Oklahoma's cigarette tax

(continued...)

18

determined the Eleventh Amendment deprived it of subject matter jurisdiction over MCN's § 1983 claim against the Commissioners as to Counts IV and V of MCN's amended complaint, both of which seek retrospective relief. That leads us to our next inquiry, that is, the viability of MCN's § 1983 claim insofar as its seeks prospective relief against the Commissioners.

IV.

Section 1983 permits "citizen[s]" and "other *person*[*s*] within the jurisdiction" of the United States to seek legal and equitable relief from "person[s]" who, under color of state law, deprive them of federally protected rights. 42 U.S.C. § 1983 (emphasis added). We have just seen that a suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment because, under such circumstances, the officials are stripped of their representative character. Oddly enough, however, such officials constitute persons acting "under color of state law" within the meaning of § 1983. See Will, 491 U.S. at 71 n.10. But whether a claimant constitutes a "person within the jurisdiction" of the United States entitled to maintain suit under § 1983 is an

---

[10](...continued)
enforcement scheme when they seized MCN's cigarettes. Thus, Treasure Salvors offers MCN no assistance on Count IV of its amended complaint. See id. at 281 ("We do not think Treasure Salvors . . . is helpful to the Tribe because the state officials there were acting beyond the authority conferred upon them by the State, a theory the Tribe does not even attempt to pursue in the case before us." (internal citation omitted)).

19

entirely separate inquiry.

In Inyo County v. Paiute-Shoshone Indians, 538 U.S. 701 (2003), the Court addressed the sufficiency of an Indian tribe's suit seeking to establish the right, based on its sovereign status, to be free from a state's criminal process. Specifically, the Court considered whether the tribe could sue under § 1983 to prevent law enforcement officers from executing state-issued search warrants to seize tribal records. The Court held under the facts presented that the tribe did "not qualify as a 'person' who may sue under § 1983." Inyo County, 538 U.S. at 704. Explaining the tribe claimed immunity from state law enforcement processes because of its asserted sovereign status, the Court reasoned: "Section 1983 was designed to secure private rights against government encroachment, not to advance a sovereign's prerogative to withhold evidence relevant to a criminal investigation." Id. at 712 (internal citation omitted). The Court concluded the tribe could not sue under § 1983 to vindicate its alleged sovereign right to be free from state law enforcement processes. Id. The Court suggested, however, that an Indian tribe's status as a sovereign entity did not *per se* foreclose its ability to bring suit as a "person" under § 1983. Instead, the viability of a tribe's § 1983 suit depended on whether the tribe's asserted right was of a sovereign nature: "There is in this case no allegation that the County lacked probable cause or that the warrant was otherwise defective. It is only by virtue of the Tribe's asserted 'sovereign' status that it claims immunity from the County's processes." Id. at 711.

20

Mindful of Inyo County, we read those portions of MCN's amended complaint over which the district court had subject matter jurisdiction as seeking prospective relief "to vindicate its status as a sovereign immune from state processes under federal law."[11] Id. at 706. To be sure, MCN alleges OTC lacked "probable cause" to stop and search MCN's vehicles and seize their lading. And of course, as MCN points out, an entity's right to insist on compliance with the Fourth Amendment, assuming it has the capacity to do so, does not depend on its sovereign status.[12] But a prospective injunction instructing state officials to comply with the law–in this case the Fourth Amendment–without something more, serves no useful purpose beyond the law itself, which such officials are already bound to obey. As we have already observed, the something more MCN seeks to achieve in this case is an

---

[11] Because the Court in Inyo County determined the tribe sought to assert sovereign rights, the Court did not definitively resolve whether a sovereign could sue under § 1983 to vindicate personal, non-sovereign rights. Inyo County, 538 U.S. 710-12. Subsequently, certain of our sister circuits appear to have provided different answers to that question, albeit in differing contexts. Compare Va. Office for Prot. & Advocacy v. Reinhard, 405 F.3d 185, 190 (4th Cir. 2005) (holding a state agency as "an arm of the state" cannot constitute a "person" under § 1983 because it is a sovereign entity), with Keweenaw Bay Indian Cmty. v. Rising, 569 F.3d 589, 596 n.5 (6th Cir. 2009) (rejecting the argument that an Indian tribe can never constitute a "person" under § 1983). Given our conclusion that MCN's § 1983 claim rests on its asserted sovereign status, we need not now weigh in on that debate.

[12] As we most recently explained in United States v. Johnson, 584 F.3d 995, 999 n.3 (10th Cir. 2009), reference to "standing" in the context of a Fourth Amendment violation is to be avoided because Fourth Amendment "standing" is not jurisdictional. Rather, "the question of whether a [party] can show a violation of [its] own Fourth Amendment rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." Johnson, 584 F.3d at 999 n.3 (internal quotations omitted).

21

injunction that not only directs OTC to comply with the Fourth Amendment, but also effectively enjoins OTC from exercising against MCN what the latter refers to in its amended complaint as "the taxing, prosecutorial and civil authority of the OTC," in other words, the state cigarette tax enforcement scheme from which MCN claims exemption *due only to its sovereign status*. See supra at 12–13 & n.8.

Referring on multiple occasions in the amended complaint to its sovereign status, MCN, as we read its amended complaint, in effect seeks to vitiate Oklahoma's cigarette tax enforcement scheme to the extent it authorizes interference with MCN's vehicles and seizure of their lading while those vehicles are in transit between Indian country because such seizures purportedly interfere with "Indian commerce." As MCN tells us on page two of its reply brief: "Here, the Creek are challenging the Oklahoma Taxing Authority's stop, searches and seizures of Creek property *while in transit between Indian country*." (emphasis added). This most certainly is not a personal challenge to OTC's activity. No exemption from the state's statutory scheme based on Indian commerce would be available to MCN suing as a non-sovereign "person." The final two paragraphs of the amended complaint's "General Allegations" well illustrate the sovereign element of MCN's claim. Paragraph 28 alleges: "The intrusion of the taxing, prosecutorial and civil authority of the OTC into intra-tribal Indian Commerce violates and threatens The Nation's sovereign rights as those rights have been defined and guaranteed by the Treaties, Statutes and court decisions of the United States." Paragraph 29 follows (subsequently

22

repeated verbatim in paragraph 30): "The OTC's attempt to exercise taxing and civil authority against The Nation violates The Nation's sovereign immunity and impermissibly burdens Indian commerce in violation of the Constitution." Of course, a "person" within the meaning of § 1983 possesses neither "sovereign rights" nor "sovereign immunity." The district court correctly construed MCN's § 1983 claim as designed to vindicate MCN's status as a sovereign immune from Oklahoma's cigarette tax enforcement scheme, and thus correctly held MCN did not constitute a "person" entitled to bring suit for prospective relief against the Commissioners under § 1983. This brings us to the final section of our discussion in which we address MCN's argument that the district court erred in refusing to read the amended complaint as containing, apart from its claimed civil rights violations, a claimed violation of the Indian Commerce Clause, U.S. Const. art. I, § 8.

## V.

We have no quarrel with the district court's sound construction of MCN's amended complaint because, given the applicable law, the complaint contains no claim under the Indian Commerce Clause that "'is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). In its reply brief, MCN analogizes its supposed claim to one a state might make under the dormant Interstate Commerce Clause and argues the "checkerboard pattern of Indian country," referred to in its amended complaint, "necessarily must give rise to an implied right of intra-tribal movement of goods without State interference." In other words, MCN's roundabout

23

claim that OTC's Commissioners may not invoke Oklahoma's cigarette tax enforcement scheme to interfere with MCN's vehicles while transporting cigarettes between Indian country "rests upon a strict, absolutist view of Indian Commerce Clause preemption." James v. Watt, 716 F.2d 71, 74 (1st Cir. 1983) (Breyer, J.). But the Supreme Court has admonished us that "[t]ribal reservations are not States, and the differences in the form and nature of their sovereignty make it treacherous to import to one notions of preemption that are properly applied to the other." White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 143 (1980). In holding a state may levy severance taxes on reservation-based oil and gas production by non-Indian lessees despite the simultaneous imposition of a tribal severance tax, the Court explained: "[T]he fact that States and tribes have concurrent jurisdiction over the same territory makes it inappropriate to apply Commerce Clause doctrine in the context of commerce 'among' States with mutually exclusive territorial jurisdiction to trade 'with' Indian tribes." Cotton Petrol. Corp. v. New Mexico, 490 U.S. 163, 192 (1989). Rather, Bracker informs us:

> [C]ongressional authority [to regulate tribal affairs under the Indian Commerce Clause] and the 'semi-independent position' of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be preempted by federal law. Second, it may unlawfully infringe on the right of reservation Indians to make their own laws and be ruled by them. The two barriers are independent because either, standing alone can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members.

Bracker, 448 U.S. at 142–43 (internal quotations and citations omitted).

24

As to the first "barrier," the Court observed in <u>Washington v. Confederated Tribes</u>, 447 U.S. 134, 157 (1980), that "[i]t can no longer be seriously argued that the Indian Commerce Clause, of its own force, automatically bars all state taxation of matters significantly touching the political and economic interests of the Tribes." Necessarily then, MCN cannot seriously argue that the Indian Commerce Clause, *of its own force*, automatically bars or preempts a state from enforcing its tax laws outside Indian country, even if such enforcement significantly touches the political and economic interests of MCN. To the extent MCN's amended complaint alleges otherwise, it fails to state a claim under the Indian Commerce Clause. Because MCN points to no federal law other than the Indian Commerce Clause that might override or preempt the authority of the Commissioners to seize MCN's unstamped cigarettes outside Indian country pursuant to Oklahoma state law, MCN must rely on the second "barrier" and sufficiently allege the Commissioners' execution of the state's tax enforcement scheme infringes on MCN's right "to make their own laws and be ruled by them." But MCN's amended complaint fails to contain any factual allegations as to why this might be. Instead, MCN alleges Indian sovereignty makes it just so. But <u>Confederated Tribes</u> tells us that is not so.

In <u>Confederated Tribes</u>, the Supreme Court held "the State may validly require the tribal smokeshops to affix tax stamps purchased from the State to individual packages of cigarettes prior to the time of sale to nonmembers of the Tribe." <u>Confederated Tribes</u>, 447 U.S. at 159. Importantly, the Court further held that

25

notwithstanding the fact a tribe's "cigarettes in transit are as yet exempt from state taxation," a state may seize as contraband a tribe's unstamped cigarettes outside Indian country if the tribe does not cooperate in collecting state cigarette taxes "validly imposed":

> We find that Washington's interest in enforcing its valid taxes is sufficient to justify these seizures. Although the cigarettes in transit are as yet exempt from state taxation, they are not immune from seizure when the Tribes, as here, have refused to fulfill collection and remittance obligations which the State has validly imposed. It is significant that these seizures take place outside the reservation, in locations where state power over Indian affairs is considerably more expansive than it is within reservation boundaries. By seizing cigarettes en route to the reservation, the State polices against wholesale evasion of its own valid taxes without unnecessarily intruding on core tribal interests.

Id. at 161–62 (internal citation omitted); accord Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 21 (1st Cir. 2006) (en banc) ("It is beyond peradventure that a state may seize contraband cigarettes located outside Indian lands but in transit to a tribal smoke shop."); Yakama Indian Nation v. Wash. Dept. of Revenue, 176 F.3d 1241, 1246 (9th Cir. 1999) ("[T]he Supreme Court has specifically approved of states enforcing their tax laws through the off-reservation seizure of unstamped cigarettes."). *If* MCN had alleged it was in compliance with the cigarette tax collection and remittance obligations that the State of Oklahoma had validly imposed upon MCN, and Oklahoma's interest in enforcing its tax laws was therefore insufficient to justify interfering with MCN's vehicles and their lading, our analysis of MCN's amended complaint *might* differ. But MCN's amended complaint, lacking

26

in so many respects, falls short in this respect as well.

AFFIRMED.