**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SUMMER COLBY; JAMES R.
COLBY,

     Plaintiffs - Appellants,

v.

MICHAEL HERRICK; CHRIS
WHITNEY, as Commissioner of the
Brand Inspection Division; BRAND
INSPECTION DIVISION,

     Defendants - Appellees,

and

COUNTY AND DISTRICT COURT
OF FREMONT COUNTY; THE
HONORABLE NORMAN
COOLING;

     Defendants.
_____

No. 16-1120

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-01860-MSK-KLM)**
_____

Submitted on the briefs.[*]

_____

[*]    We do not believe that oral argument would be helpful. As a result, we are deciding the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

Summer R. Colby and James Colby, Grand Junction, Colorado, Pro-se Plaintiffs-Appellants.

Cynthia H. Coffman, Attorney General, and Andrew M. Katarikawe, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees.

———————————————

Before **HOLMES**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

———————————————

**BACHARACH**, Circuit Judge.

———————————————

This appeal grew out of a battle over Winter, a horse that belonged to Ms. Summer Colby. Ms. Colby and her mother grew estranged and wrangled over who owned Winter. The mother allegedly complained to the Colorado Department of Agriculture, which responded by sending someone from the Brand Inspection Division to investigate. After investigating, the inspector seized the horse, prompting Ms. Colby and her mother to rumble in court over ownership. After almost three years, Ms. Colby prevailed and got her horse back.

When the horse was returned to Ms. Colby, she and her husband sued the Division and two of its officers, but the district court dismissed the action. The Colbys appeal, generating issues involving the Eleventh Amendment and the statute of limitations.

The Eleventh Amendment precludes anyone from suing an arm of the state or asserting a damage claim against state officers in their official capacities. The Division is an arm of the state entitled to Eleventh

2

Amendment immunity. And two of the defendants (Mr. Michael Herrick and Mr. Chris Whitney) are

- employees of an arm of the state

- being sued in their official capacities for damages.

These claims are precluded by the Eleventh Amendment.

After dismissal of these claims, the Colbys would be left with federal claims for damages against Mr. Herrick and Mr. Whitney in their personal capacities.[1] For these claims, the Colbys had to sue within two years of when the cause of action accrued. The federal claims for damages accrued when the inspector seized the horse, which took place more than two years before the Colbys sued. Thus, the limitations period expired on the federal claims for damages against Mr. Herrick and Mr. Whitney in their personal capacities.

In light of Eleventh Amendment immunity and expiration of the limitations period, we conclude that the district court properly dismissed all of the claims.

## 1.    Eleventh Amendment Immunity

The defendants include the Brand Inspection Division and two of its officers. The Division enjoys Eleventh Amendment immunity as an arm of the state. With this status, the Division cannot be sued in federal court.

---

[1]    The Colbys also asserted state-law claims, but they are not involved in this appeal.

Nor can the Colbys bring claims for damages against the two officers in their official capacities.

## A. Standard of Review

On the issue of Eleventh Amendment immunity, we engage in de novo review. *Arbogast v. Kan. Dep't of Labor*, 789 F.3d 1174, 1181 (10th Cir. 2015). In conducting this review, we restrict ourselves to the factual allegations in the complaint because the defendants have not pointed to any other evidence. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

## B. Claims Against the Brand Inspection Division

Applying de novo review, we conclude that the district court properly held that the Division enjoyed Eleventh Amendment immunity.

Eleventh Amendment immunity extends to governmental entities that are considered arms of the state. *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996). Our precedents suggest five potential factors:

1. How is the Division characterized under Colorado law?

2. How much guidance and control does the State of Colorado exercise over the Division?

3. How much funding does the Division receive from the State?

4. Does the Division enjoy the ability to issue bonds and levy taxes?

4

5. Does the State of Colorado bear legal liability to pay a judgment against the Division?

*Sturdevant v. Paulsen*, 218 F.3d 1160, 1166 (10th Cir. 2000). These factors lead us to conclude that the Division is considered an arm of the state.

On the first factor, Colorado law treats the Division as part of the state government. *See People v. Lange*, 110 P. 68, 70 (Colo. 1910) ("The State Board of Stock Inspection Commissioners is but an auxiliary of the state government."). The Division participates in state government as a state agency. *See Alfred v. Esser*, 15 P.2d 714, 715-16 (Colo. 1932) (characterizing an action against the Colorado Board of Stock Inspection as an action against a state agency). The agency's inspectors are Colorado law enforcement officers, with the power to make arrests for violations of state law. *See* Colo. Rev. Stat. § 35-53-128; *Delta Sales Yard v. Patten*, 892 P.2d 297, 301 (Colo. 1995); *see also* R. at 339, 353 (the Colbys' allegation that the Division's inspectors have limited arrest powers in the exercise of their statutory duties).

Second, the State of Colorado exercises considerable guidance and control over the Division. The Division is considered a part of the state Department of Agriculture. Colo. Rev. Stat. § 24-1-123(4)(g)(I). As a result, the Division is subject to control by state officials. For example, the Division's stock inspection commissioners are appointed and removed by the governor. *Id*. § 35-41-101(1); *see also* R. at 336 (the Colbys' allegation

5

that the governor appoints five board members and can remove these board members for cause). These powers support treating the Division as an arm of the state. *See Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575-77 (10th Cir. 1996) (holding that an agency constituted an arm of the state when fifteen of the sixteen board members had been appointed by the governor).

The third and fourth factors, involving the amount of funding received from the State and the authority to issue bonds, cut both ways. The Colbys allege in the third amended complaint that the Division is entirely self-funded.[2] R. at 337. And the State Board of Stock Commissioners is entitled to issue bonds worth up to $10 million to pay the Division's expenses. Colo. Rev. Stat. § 35-41-101(5)(a); *see also* R. at 338 (the Colbys' allegation that the State Board of Stock Commissioners can issue revenue bonds up to $10 million). The self-funding and power to issue bonds cut against Eleventh Amendment immunity.

But the Division is entitled to participate in the Colorado risk management fund, which obtains money from state appropriations. Colo.

---

[2] Colorado law provides that the Division is considered an "enterprise" for purposes of the Colorado Constitution, article X, section 20. Colo. Rev. Stat. § 35-41-101(5)(1); *see also* R. at 337, 357 (the Colbys' allegation that the Division is a state-created enterprise). Under the Colorado Constitution, an "enterprise" is a government-owned business that receives less than 10% of its annual revenue from state and local governments. Colo. Const. art. X, § 20(2)(d).

6

Rev. Stat. §§ 24-30-1502(5)(a), 24-30-1510(3)(a). This use of state money supports consideration of the Division as an arm of the state. *See Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 576-77 (10th Cir. 1996) (holding that a state medical center is an arm of the state, although 95-96.5% of the budget is self-funded, because the bulk of any judgment would come from the state's risk management fund).

The final consideration is whether the State bears legal liability to pay a judgment against the Division. The Division does not address this factor. At least some of the Division's fees are placed with the state treasurer. Colo. Rev. Stat. § 35-55-115. But we lack enough information to conclusively decide whether the State of Colorado's Treasury would be legally obligated to satisfy a judgment against the Division.

For the sake of argument, we may assume that a judgment against the Division would not legally obligate the State to pay out of the state treasury. Even with this assumption, however, the remaining factors would require us to treat the Division as an arm of the state. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1233 (10th Cir. 1999) (holding that an entity constituted an arm of the state when it was unclear how the entity satisfies money judgments, reasoning that the entity's board members served as members of the state's board of education).

7

The first and second factors support characterization as an arm of the state, and the third and fourth factors cut both ways. Even if the fifth factor favors the Colbys, the balance of factors would lead us to regard the Division as an arm of the state. *See Colorado v. United States*, 219 F.2d 474, 477 (10th Cir. 1954) (stating that Colorado conducts its inspections through the State Board of Stock Inspection Commissioners in Colorado's "sovereign capacity as a state"). This status triggers the Eleventh Amendment, insulating the Division from suit in federal court. Because the Eleventh Amendment applies, the district court was right to dismiss the claims against the Division.

But on the federal due-process claim, the district court made the dismissal with prejudice. Because Eleventh Amendment immunity is jurisdictional, this dismissal should have been without prejudice. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (stating that Eleventh Amendment immunity is jurisdictional); *Barnes v. United States*, 776 F.3d 1134, 1151 (10th Cir. 2015) (stating that jurisdictional dismissals should ordinarily be without prejudice).

## C. Official-Capacity Claims for Damages Against Mr. Herrick and Mr. Whitney

In district court, Mr. Herrick and Mr. Whitney also invoked Eleventh Amendment immunity on the official-capacity claims for damages. But the

8

district court never ruled on the applicability of the Eleventh Amendment to these defendants.

We address Eleventh Amendment immunity *sua sponte* with respect to Mr. Herrick and Mr. Whitney. *See United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (allowing the court to raise Eleventh Amendment immunity sua sponte).

Damage claims against state officers in their official capacities trigger Eleventh Amendment immunity. *Edelman v. Jordan*, 415 U.S. 651, 676-77 (1974). This immunity exists here because the Colbys sought damages from two officers (Mr. Herrick and Mr. Whitney) in their official capacities on behalf of an arm of the state. As a result, Mr. Herrick and Mr. Whitney were entitled to dismissal on the official-capacity claims for damages.

The district court did dismiss these claims, but did so based on the statute of limitations rather than the Eleventh Amendment. The difference is material because the district court's rationale led to a dismissal with prejudice. But as noted above, Eleventh Amendment immunity is jurisdictional. *See* p. 8, above. As a result, these dismissals should have been without prejudice.

**2.     Statute of Limitations**

These dismissals leave the federal personal-capacity claims against Mr. Herrick and Mr. Whitney for damages. The district court dismissed these claims based on timeliness, and this determination was correct.

**A.     Standard of Review**

This determination was based on Federal Rule of Civil Procedure 12(b)(6). In reviewing this determination, we engage in de novo review, crediting the well-pleaded allegations as true and viewing them in the light most favorable to the Colbys. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994) (stating that we engage in de novo review of a dismissal for failure to state a valid claim); *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 858 (10th Cir. 2016) (stating that we view the well-pleaded allegations as true and consider them in the light most favorable to the non-moving party). Though we credit these allegations, we independently determine the applicability of the statute of limitations. *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1290 (10th Cir. 1991). Once we decide the applicability of the limitations period, we consider whether "the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

10

## B.    Timeliness of Suit

In applying this standard, we start with when the cause of action accrued. Accrual takes place when the wrongdoer commits an act and the plaintiff suffers damage. *Wallace v. Kato*, 549 U.S. 384, 391 (2007).[3]

Here the wrongful act consisted of seizure of the horse on July 22, 2011, and the Colbys' alleged damage was immediate. Thus, the cause of action accrued on July 22, 2011, triggering the two-year period of limitations on the federal claims against Mr. Herrick and Mr. Whitney. *See Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993) (two-year period of limitations). But the Colbys did not sue until almost three years later. Thus, we would ordinarily consider these claims time-barred.

The Colbys seek to avoid a time-bar with two arguments: (1) The federal claims did not accrue until a post-deprivation remedy was denied, and (2) the tort was continuing. These arguments were waived and are invalid on the merits.

The Colbys did not make these arguments when responding to the motion to dismiss. Instead, the Colbys waited to make these arguments for the first time when objecting to the magistrate judge's report and recommendation. That was too late. *See ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184-85 (10th Cir. 2011) (holding that issues are

---

[3]    In § 1983 proceedings, accrual involves a matter of federal law. *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011).

waived when raised for the first time in objecting to a magistrate judge's recommendation).[4]

Even if these arguments had not been waived, they would fail as a matter of law. The federal claims accrued when the Colbys knew or should have known that they would not receive a timely post-deprivation hearing. *See Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (stating that a § 1983 cause of action accrues when the claimant knows or should have known of a constitutional violation).

The Colbys allege in the third amended complaint that the inspector seized the horse and told the mother and daughter that they needed to settle their ownership dispute in their own private suit. Thus, the allegations in the third amended complaint indicate that the Colbys knew, upon seizure of the horse, that the State would not provide a post-deprivation hearing.[5]

According to the Colbys, however, the tort was not complete until the Division denied a post-deprivation hearing. We disagree: Due process would have been violated as soon as it became clear that the Division

---

[4]    The district judge observed that the Colbys had failed to include the "continuing tort" argument in objecting to the motion to dismiss. R. at 572 n.4. But the district judge declined to decide the issue of waiver because the Colbys' argument failed on the merits. *Id.*

[5]    We do not imply that a post-deprivation hearing would have been necessary. In addressing a similar claim against a Wyoming brand inspector, we held that due process was provided when state officials provided the owner of cattle with an opportunity to supply adequate proof of ownership. *Stanko v. Maher*, 419 F.3d 1107, 1116 (10th Cir. 2005).

would not afford a prompt post-deprivation hearing. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

When did this become clear? The Colbys tell us in the third amended complaint, alleging that the inspector had said from the outset that no hearing would be provided and that the mother and daughter would need to resolve ownership through their own court action. R. at 342, 364. Thus, it was clear by July 22, 2011 (the date of the seizure) that the State would not provide a post-deprivation hearing.

For the sake of argument, we might generously assume that the Colbys might have continued to anticipate a post-deprivation hearing. But at some point, a post-deprivation hearing would be too late to satisfy due process. When did the delay cross that line? The Colbys again tell us, arguing in district court that a post-deprivation hearing would be timely only if it had been made available within six weeks of the seizure. *See* R. at 517 (the Colbys' objection to the magistrate judge's report) ("Defendants had a clear duty to provide for a pre-deprivation hearing, and even in exigent circumstances, they are required to *provide for* an incredibly expedient, timely, post-deprivation hearing inside far less than six weeks."). That six-week period would have ended on September 2, 2011, which was still more than two years before the Colbys sued. Thus, the federal claims against Mr. Herrick and Mr. Whitney remain time-barred

13

even if the alleged constitutional violation had not materialized until the State failed to provide a timely post-deprivation hearing.

The Colbys also argue that the tort was continuing as long as the State continued to deny a post-deprivation hearing. We disagree. For the sake of argument, we can assume that the continuing violation doctrine applies in § 1983 cases. This doctrine is triggered by continuing unlawful acts but not by continued damages from the initial violation. *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011).

The continuing violation doctrine would not apply here. The wrongdoing took place on a discrete date (July 22, 2011) when the horse was seized. The complaint does not base the claim on any acts taking place after July 22, 2011. Instead, the Colbys simply allege that they continued to suffer damages from their continued inability to enjoy their horse for a period of almost three years. Though damages continued, the wrongful acts did not. *See Pike v. City of Mission*, 731 F.2d 655, 660 (10th Cir. 1984) ("[A] plaintiff may not use the continuing violation theory to challenge discrete actions that occurred outside the limitations period even though the impact of the acts continues to be felt."), *overruled on other grounds by Baker v. Bd. of Regents*, 991 F.2d 628, 633 (10th Cir. 1993). As a result, the Colbys cannot take advantage of the continued violation doctrine.

14

### 3.    Conclusion

The Eleventh Amendment applies, foreclosing suit against the Division. Thus, the district court was right to dismiss the claims against the Division. But on the federal due-process claim against the Division, the dismissal should have been without prejudice.

In addition, the district court should have held that the official-capacity claims for damages against Mr. Herrick and Mr. Whitney were precluded under the Eleventh Amendment. These dismissals should also have been without prejudice.

The remaining federal claims against Mr. Herrick and Mr. Whitney were properly dismissed based on expiration of the statute of limitations. The claims accrued when the inspector seized the horse, and the commission of a single, discrete tort did not trigger the continuing violation doctrine. Thus, the federal personal-capacity claims against Mr. Herrick and Mr. Whitney were properly dismissed.

Based on these conclusions, we remand for the limited purpose of directing the district court to make the dismissals without prejudice on (1) the federal due-process claim against the Division and (2) the official-capacity claims for damages against Mr. Herrick and Mr. Whitney.