**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

HEATHER BURKE,

    Plaintiff - Appellant,

v.

STATE OF NEW MEXICO; EDWYNN
BURCKLE, in both his official and
individual capacities as Secretary of the
General Services Department; JAY HONE;
MICHAEL GALLEGOS; ANGELA
DAWSON; BRENDA GUETHS; KAREN
BALTZLEY, in their individual capacities,

    Defendants - Appellees.

No. 16-2238
(D.C. No. 1:16-CV-00470-RJ-SMV)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

In this employment case, Heather Burke appeals pro se from a district court order

that dismissed her complaint and denied leave to amend. Exercising jurisdiction under

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

28 U.S.C. § 1291, we affirm in part, reverse in part, vacate in part, and remand for further proceedings on her privacy, wage-discrimination, and whistleblowing claims.

## BACKGROUND

Ms. Burke began working for the New Mexico General Services Department (GSD) in January 2013 "as an IT Generalist 2." R. at 25. Her job duties included "provid[ing] IT support and customer services for GSD." *Id.* at 277. She was supervised by Karen Baltzley, who reported directly to GSD Secretary Edwynn Burckle.

Ms. Burke claims that she "surveyed the pay levels for her department" and learned that "[t]he men made 9-12% more than the women in the same positions." *Id.* at 26. She also allegedly learned that other employees had committed "malfeasance in public office," "violat[ed] . . . state law and administrative code," engaged in "gross misconduct and gross mismanagement of staff and public funds, and [committed] abuses of authority." *Id.* at 14. When she reported these issues "to her superiors and to others[,] . . . the [d]efendants retaliated against [her] by decreasing work responsibilities, assignments, benefits, income and creating and maintaining a hostile work environment." *Id.*

Ms. Burke also reported one of her coworkers for acting in a "threatening manner" and for "put[ting] sensitive personal information entrusted to GSD at risk of theft, exposure, or other breach that could result in great harm." *Id.* Instead of remedying these issues, Supervisor Baltzley notified Ms. Burke's harasser of the claims she had made against him, *id.* at 37, gave the harasser advance notice of a security audit, *id.* at 53, and directed him to "secretly record[ ] [Ms. Burke]," *id.* at 64.

2

In December 2014, Ms. Burke was diagnosed with cancer and several months later she began chemotherapy. She contends that GSD responded by "increas[ing] [its] retaliatory and hostile behavior." *Id.* at 17. Nevertheless, "[s]he continued to uncover numerous security issues that she dutifully reported." *Id.*

On "several" occasions around May 2015, Supervisor Baltzley "shared Ms. Burke's personal health info" with others "despite Ms. Burke asking her not to." *Id.* at 65. When Ms. Burke "confront[ed] [Supervisor] Baltzley about this," she "was accused of 'insubordination.'" *Id.*

On an unspecified night after work, Ms. Burke found in the parking lot a piece of paper bearing her name, social-security number, date of birth "and medical diagnosis of 'Breast Cancer'" along with the "same information for 20 or so other people." *Id.* at 22. She reported her finding, but "GSD did nothing." *Id.* at 23.

In June 2015, "Ms. Burke was placed under investigation . . . for an oversight she made almost exactly a year before." *Id.* at 18. She was ultimately suspended for a week without pay. Ms. Burke's union declined to arbitrate the suspension, leaving her "no reasonable method to appeal th[e] . . . disciplinary action." *Id.* at 347.

When Ms. Burke returned to work, the retaliation and hostility continued. Fearing that she was going to "be[ ] fired for having cancer," Ms. Burke contacted a reporter and revealed "information about her health and other [private] details" for newspaper articles that appeared in September and October 2015. *Id.* at 69; *see also id.* at 70.

In May 2016, Ms. Burke filed suit in state court against the State of New Mexico, Secretary Burckle, Human Resources Director Michael Gallegos, Human Resources

3

Manager Brenda Gueths, Supervisor Baltzley, Jay Hone, and Angela Dawson. The complaint comprised 77 pages and recounted Ms. Burke's employment experiences at GSD in almost day-to-day detail. She advanced federal claims for equal-protection and privacy violations, and state law claims for wage discrimination/retaliation and whistleblower retaliation. Secretary Burckle removed the case to federal court, where the defendants moved to dismiss Ms. Burke's complaint.

In response, Ms. Burke moved to amend her complaint. The proposed amended complaint substituted GSD for the State of New Mexico and added another individual to the original list of defendants. While the body of the new complaint shrank to 44 pages, it (1) added a federal wage-discrimination/retaliation claim that mirrored the existing state law claim; (2) attacked her union's arbitration decision as violating due process and the union's collective-bargaining agreement; and (3) included 79 pages of exhibits. The proposed amended complaint revealed that in July 2016, Ms. Burke had "accepted [a] constructive discharge." R. at 314.

The district court granted the defendants' motion, dismissed all of Ms. Burke's claims, and denied leave to amend as futile. Ms. Burke appeals.

## DISCUSSION
### I. Standards of Review

We review a Rule 12(b)(6) dismissal de novo. *Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). In doing so, "we accept as true the well pleaded factual allegations and then determine if the plaintiff has provided enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir.

4

2014) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

"The 12(b)(6) standard does not require that [the] Plaintiff establish a prima facie case in [the] complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1172 (10th Cir. 2015) (brackets and internal quotation marks omitted). But the elements of a prima facie case may be used to shed light upon a claim's plausibility. *See Kahlik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

As for leave to amend, it should generally be freely granted. *See Jones v. Norton*, 809 F.3d 564, 579 (10th Cir. 2015), *cert. denied*, 137 S. Ct. 197 (2016). But it should be denied when amendment would be futile, in that "the complaint, as amended, would be subject to dismissal." *Fields v. City of Tulsa,* 753 F.3d 1000, 1012 (10th Cir. 2014) (internal quotation marks omitted). And where, as here, leave to amend is denied due to futility, we review for an abuse of discretion, which "includes de novo review of the legal basis for the finding of futility." *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (internal quotation marks omitted).

Because Ms. Burke "is pro se, we liberally construe h[er] filings, but we will not act as h[er] advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Further, pro se litigants must adhere to the same procedural rules as other litigants. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

5

## II.  42 U.S.C. § 1983
### A.  Eleventh Amendment Immunity

The district court concluded that it lacked jurisdiction over Ms. Burke's claims against the State of New Mexico because the state is immune from suit under the Eleventh Amendment.  *See Frazier v. Simmons*, 254 F.3d 1247, 1252-53 (10th Cir. 2001).  Ms. Burke correctly argues that the district court indeed had jurisdiction because a state's "voluntary removal constitutes consent to have the claim heard in a federal forum."  *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014).  But Ms. Burke forfeited her removal argument by not raising it in the district court. *See Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016) (observing that "[i]f a new theory simply wasn't raised before the district court, we usually hold it forfeited" and will not reverse absent "a plainly erroneous result" (brackets and internal quotation marks omitted)).  And because she does not seek plain-error review, the argument is waived on appeal.  *See United States v. MacKay*, 715 F.3d 807, 831 (10th Cir. 2013) ("In this Circuit, the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." (internal quotation marks omitted)); *see also Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1228 n.3 (10th Cir. 2010) (declining to consider an argument on waiver grounds that sought to establish that the sovereign had waived Eleventh Amendment immunity); *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (noting that "the party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived").

6

The district court also relied on the Eleventh Amendment to dismiss Ms. Burke's § 1983 claims against Secretary Burckle in his official capacity. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). But as far as we can tell, Ms. Burke's complaint advances no official-capacity § 1983 claims against Secretary Burckle. Rather, the complaint indicates that the § 1983 claims are brought against the defendants, including Secretary Burckle, "in their individual capacities." R. at 85-88. And on appeal, Ms. Burke represents that she brought only individual-capacity § 1983 claims against Secretary Burckle.[1]

Thus, although the district court erroneously believed it lacked jurisdiction over the State of New Mexico, we will affirm the state's dismissal, as Ms. Burke has waived the error. As for the district court's dismissal of the non-existent claims against Secretary Burckle in his official capacity, we vacate the district court's judgment in that regard.

### B. Equal Protection

The district court dismissed Ms. Burke's equal-protection claim because she failed to allege the personal involvement of any defendant. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (internal quotation marks omitted)). We agree with that determination.

---

[1] Although there are no official capacity § 1983 claims in the complaint, we remind the district court that the dismissal of such a claim on jurisdictional grounds must be *without* prejudice. *See Colby*, 849 F.3d at 1278.

Ms. Burke alleged that "the Defendants" were aware of "discriminatory difference[s] in pay" and "gender based harassment," yet failed to remedy those issues and instead "retaliate[d] against [her] for reporting" them. R. at 85, 86. But she did not allege how any particular defendant treated her differently based on her gender. To state a plausible § 1983 equal-protection claim, a plaintiff must allege facts indicating how each defendant was personally responsible for treating her "differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). This she did not do.

The only individual Ms. Burke specifically mentioned was Secretary Burckle. She alleged that he "failed to properly train and discipline his staff in all matters in connection with violations of [her] constitutional rights." R. at 86. But she did not allege "an affirmative link between [Secretary Burckle] and the constitutional violation." *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016) (internal quotation marks omitted). In other words, she alleged no "specific deficiency in" Secretary Burckle's training regimen that was "closely related to h[er] ultimate injury" and that "actually caused" unequal treatment. *Id.* at 839 (internal quotation marks omitted)

Ms. Burke is correct in arguing that deliberate indifference to known sexual harassment can, under certain circumstances, serve as a basis for supervisory liability under an equal-protection theory. *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999). But she has not alleged the facts necessary to proceed under that theory. She must show how each defendant who occupied a supervisory role "actually

. . . acquiesced in" her harassment. *Id.* (internal quotation marks omitted).  As we have indicated, "direct personal responsibility" is required for *any* plausible § 1983 claim. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).  It is insufficient to allege merely that a supervisor had "knowledge of [a] subordinate's discriminatory purpose." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Thus, the district court did not err in dismissing Ms. Burke's equal-protection claim.  Nor did the district court abuse its discretion in denying leave to amend, as Ms. Burke's proposed amended complaint did not cure the deficiencies we have identified.

## C.  Right of Privacy

Ms. Burke alleged that Supervisor Baltzley "repeatedly disclosed information pertaining to [her] medical condition, treatment, medical accommodation, disciplinary action and other private details with coworkers, contractors and the general public."  R. at 87.  Secretary Burckle, Dawson, and Hone were allegedly deliberately indifferent to Supervisor Baltzley's conduct and "failed to provide training or discipline . . . to prevent reoccurrence of these constitutional violations."  *Id.*  We conclude that Ms. Burke's privacy claim, which she advances under the Fourth Amendment, is too speculative to proceed as pled.

Specifically, it is not entirely clear when the revelations of health information occurred or who was responsible.  Timing is critical because Ms. Burke divulged the same information to a newspaper reporter who used it for two published stories.  "What a person knowingly exposes to the public, even in his own home or office, is not a subject

9

of Fourth Amendment protection." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1147 (10th Cir. 2014) (internal quotation marks omitted).[2]

Thus, to the extent Ms. Burke revealed her private information to the reporter *before* a defendant disclosed it to a third party, Ms. Burke cannot complain. At most, the complaint identifies May 2015 in regard to one or more of Supervisor Baltzley's revelations. The complaint is silent, however, as to when Ms. Burke spoke to the reporter. Further, no date is provided for the evening on which Ms. Burke found her personal information on a paper in GSD's parking lot. And there are no allegations as to who was personally responsible for that revelation. As we have already made clear, § 1983 requires "personal involvement in the alleged constitutional violation." *Brown*, 662 F.3d at 1163.

To the extent Ms. Burke complains that Secretary Burckle, Dawson, and Hone are liable for Baltzley's alleged misconduct based on deliberate-indifference or failure-to-train theories, there are no allegations affirmatively linking their conduct to the revelation of Ms. Burke's private information. The fact that they may supervise Baltzley is insufficient. *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) ("[A]

---

[2] To the extent the defendants argue that Ms. Burke's privacy claim fails because she did not allege some physical intrusion upon her private documents or medical records, we note that "[t]he Fourth Amendment protects against the government's 1) unprivileged trespass on property expressly protected by the Fourth Amendment—'persons, houses, papers, and effects'—for the purpose of conducting a search or seizure; *and* 2) infringement of an individual's reasonable expectation of privacy." *United States v. Carloss*, 818 F.3d 988, 992 n.2 (10th Cir.) (emphasis added), *cert. denied*, 137 S. Ct. 231 (2016). Ms. Burke's allegations were based on the latter theory.

supervisory relationship alone is insufficient for liability under § 1983[.]"); *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").

Thus, the district court did not err in dismissing Ms. Burke's privacy claim. Nor did the district court abuse its discretion in denying leave to amend insofar as the proposed amended complaint did not materially alter her claim. But there were enough allegations in those complaints to warrant another opportunity at amendment. *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (observing that "pro se parties generally should be given leave to amend" unless "it is obvious that the plaintiff cannot prevail on the facts . . . alleged and it would be futile to" provide the chance to amend (internal quotation marks omitted)). Thus, on remand, Ms. Burke should be given a chance to amend her privacy claim to cure the deficiencies noted above.

### D. Due Process

The district court rejected Ms. Burke's due-process claim in the proposed amended complaint because she failed to allege the defendants' personal involvement. Indeed, Ms. Burke complained only that her union's "withdr[awal] from th[e] arbitration" of her suspension left her "with no reasonable method to appeal." R. at 347. Given the absence of allegations showing personal involvement by any of the defendants in her

11

inability to appeal the suspension, there was no abuse of discretion in denying leave to amend.[3]

### III. Labor Management Relations Act (LMRA)

The LMRA authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Ms. Burke alleged in her proposed amended complaint that the defendants violated the collective bargaining agreement with her union by "severely disciplin[ing] [her] for an unintentional infraction" and taking "adverse action against [her] for her Whistleblower complaints." R. at 348-49. Further, she alleged that her union refused to remedy these violations of the collective bargaining agreement. Because Ms. Burke's allegations "combine[d] two conceptually independent causes of action, the first against the company for breach of the contract (a standard [LMRA] § 301 claim [codified at 29 U.S.C. § 185(a)]) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee)," her claim constituted a hybrid action. *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998).

The district court did not recognize the hybrid nature of Ms. Burke's claim, and it concluded the claim could not proceed without Ms. Burke's union as a named defendant.

---

[3] Insofar as Ms. Burke argues on appeal that her constructive discharge was a violation of due process, she did not plead any such claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Ms. Burke correctly notes on appeal that in a hybrid § 301 case she "need not sue both h[er] union and former employer in the same case, and [s]he may choose to seek damages against only one of the potential defendants." *Id.* at 1239.

In any event, we conclude that Ms. Burke's claim fails because she proposed suing GSD, which does not qualify as an employer under the LMRA. Specifically, the LMRA excludes from the definition of "employer" "any State or political subdivision thereof." 29 U.S.C. § 152(2). Ms. Burke alleged that "GSD is a division of the Executive Branch of the State of New Mexico Government." R. at 314. Further, we note that GSD was established by the State of New Mexico "to make state government more efficient and responsive through consolidating certain state government service functions[ ] and . . . to administer laws relating to services for governmental entities." N.M. Stat. Ann. § 9-17-2. GSD is thus a political subdivision of the State of New Mexico. Denial of leave to amend to pursue an LMRA claim was therefore appropriate.

## IV.  Equal Pay
### A.  Wage Discrimination

The district court analyzed Ms. Burke's claims asserting a violation of New Mexico's Fair Pay for Women Act (FPWA) under the rubric of the federal Equal Pay Act (EPA), given the statutes' similarity. *Compare* N.M. Stat. Ann. § 28-23-3(A) (FPWA prohibiting discrimination "between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate that the employer pays wages to employees of the opposite sex in the establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are

13

performed under similar working conditions") *with* 29 U.S.C. § 206(d)(1) (EPA same).[4]

Using that approach, the district court determined that Ms. Burke had "stated facts relative to the conclusion that men were paid more than women for the same position." R. at 487.

But the district court dismissed Ms. Burke's FPWA claim and denied leave to amend to include an EPA claim, explaining that Ms. Burke had "lump[ed] Defendants together," offering no "specificity as to which Defendants knew what and when." *Id.* at 487. We conclude that the district court relied on faulty reasoning.

First, whether an employer acted with discriminatory intent is not relevant in an EPA case. *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310-11 (10th Cir. 2006) (observing that "[t]he EPA[ ] . . . impos[es] a form of strict liability on employers who pay males more than females for performing the same work").

Second, a plaintiff need only "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). As the district court acknowledged, Ms. Burke alleged she was paid less than a male colleague for "the exact same work" based solely on her sex, R. at 83. Further, Ms. Burke specifically targeted GSD as responsible for the wage discrimination. *See id.* at 83 (alleging that "GSD has no

---

[4] Given the dearth of New Mexico case law discussing the FPWA and the consensus among the parties and the district court that the FPWA and EPA are coterminous, we will address Ms. Burke's wage discrimination claims using the legal principles applicable in the EPA context. We do so, however, without expressing a view as to the reach of the FPWA.

14

legitimate, non-discriminatory business reason for failing to pay Ms. Burke equitably"
and that "[GSD] does not pay pursuant to any seniority, merit or quantity/quality of
production system"). This is sufficient "to raise a right to relief above the speculative
level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Riser v. QEP Energy*,
776 F.3d 1191, 1196 (10th Cir. 2015) ("To establish a prima facie case of pay
discrimination under the EPA, a plaintiff must demonstrate that: (1) she was performing
work which was substantially equal to that of the male employees considering the skills,
duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the
work was performed were basically the same; (3) the male employees were paid more
under such circumstances." (internal quotation marks omitted)).

Of course, Ms. Burke did not name GSD as a defendant in her original complaint.
Liability under the EPA is limited to employers. *See Peppers v. Cobb Cty.*, 835 F.3d
1289, 1296 (11th Cir. 2016). And the EPA includes "public agenc[ies]" within the
definition of "employer." 29 U.S.C. § 203(d). Because Ms. Burke did not sue the agency
she had alleged was responsible for the discrimination, her claim was properly dismissed,
but not for the reasons given by the district court.

Ms. Burke's proposed amended complaint did, however, name GSD as a
defendant. To complete her state and federal wage discrimination claims, Ms. Burke
should be granted leave to amend on remand. Leave to amend should include
Ms. Burke's proposed EPA claim, not just the addition of GSD as a defendant.

15

## B.  Retaliation

The retaliation component of Ms. Burke's wage claim does not fare as well.  In regard to retaliation, the district court concluded that Ms. Burke failed to allege that she had engaged in a statutorily protected activity, such as asserting her rights to receive equal pay.  We agree.

It is unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has" opposed or complained of wage discrimination.  29 U.S.C. § 215(a)(3); *Mickelson*, 460 F.3d at 1315 ("To state a prima facie case of [EPA] retaliation, a plaintiff is required to demonstrate:  (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." (brackets and internal quotation marks omitted)).

Granted, Ms. Burke alleged in her complaint that after "question[ing] her gender based pay disparity to her superiors and to others," R. at 14, she was "stripped of her job duties and [was] no longer assigned meaningful work," *id.* at 83.  But we can find no allegations indicating whether her "question[ing]" of pay disparity rose to the level of an actual objection or opposition to pay disparity.  Also missing are allegations of a causal connection between her "question[ing]" and the loss of job duties and meaningful work assignments.  Her complaint provides only a scattered description of events.  Although a plausible claim does not require "detailed factual allegations," there must be "something more than a statement of facts that merely creates a suspicion of a legally cognizable

16

right of action." *Twombly*, 550 U.S. at 555 (brackets, ellipses, and internal quotation marks omitted). Ms. Burke's proposed amended complaint repeats these pleading defects.

On appeal, Ms. Burke attempts to shift the focus of her retaliation claim from "question[ing]" her superiors, R. at 14, to her filing of "[a]n EEOC charge," Aplt. Opening Br. at 22. But since we cannot draw from Ms. Burke's complaint or her proposed amended complaint "the reasonable inference" that any of the defendants are "liable for the [retaliatory] misconduct [actually] alleged," *Iqbal*, 556 U.S. at 678, we conclude that the district court did not err in dismissing her retaliation claim and denying leave to amend.[5]

## V. Whistleblower Protections

New Mexico's Whistleblower Protection Act (WPA) prohibits a public employer from retaliating against an employee because she (1) "communicate[d] . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act"; (2) "provide[d] information to, or testifie[d] before, a public body as part of an investigation, hearing or inquiry into an unlawful or

_____

[5] Although the FPWA does not include language prohibiting retaliation, it does provide that "[a] person claiming to be aggrieved by an unlawful discriminatory practice in violation of the [FPWA] may[ ] . . . seek relief under the [New Mexico] Human Rights Act." N.M. Stat. Ann. § 28-23-4(A)(2). The Human Rights Act makes it unlawful for a person or employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice." *Id.* § 28-1-7(I)(2). Even assuming that either of Ms. Burke's complaints invokes the retaliation proscription contained in the Human Rights Act, her claim nevertheless lacks allegations necessary to qualify as plausible.

17

improper act"; or (3) "object[ed] to or refuse[d] to participate in an activity, policy or practice that constitutes an unlawful or improper act." N.M. Stat. Ann. § 10-16C-3. The district court found Ms. Burke's WPA claim inadequate on two grounds. We conclude that neither ground completely forecloses her claim.

First, the district court noted that Ms. Burke had identified GSD as a public employer subject to WPA liability despite not naming GSD as a defendant. That defect is remedied, however, in the proposed amended complaint. We note too that Secretary Burckle was identified as a public employer subject to liability. While this is permissible in his official capacity, *see id.* § 10-16C-2(C) (stating that "public employer" includes "every office or officer" of an agency or branch of state government), "the WPA does not create a right of action against a current or former state officer in his or her personal capacity," *Flores v. Herrera*, 384 P.3d 1070, 1073 (N.M. 2016). Thus, the district court properly dismissed the original WPA claim to the extent GSD was not named as a defendant and others were named in their individual capacities. And the district court appropriately denied leave to amend insofar as the proposed amended complaint contains WPA allegations against Secretary Burckle, Supervisor Baltzley, Human Resources Director Gallegos, Human Resources Manager Gueths, Dawson, and Hone in their individual capacities. But the district court should not have dismissed the WPA claim to the extent it designated Secretary Burckle as a § 10-16C-2(C) employer and should not have denied leave to amend to include GSD as a defendant.

Second, the district court erroneously determined that Ms. Burke's WPA claim failed because she did not specify "which communication is the basis for her WPA

18

claim" or how the defendants retaliated against her. R. at 489. Although the original complaint is prolix and often discursive, the requisite WPA allegations are decipherable. For instance, Ms. Burke alleged that (1) in April 2014 she notified Secretary Burckle, Director Gallegos, and Manager Gueths about security concerns, code violations, and gender harassment, and (2) Supervisor Baltzley soon retaliated against her by restructuring her job assignments during a project. *See* R. at 36-37, 42-46. Baltzley also allegedly damaged Ms. Burke's credibility and reputation by "ensur[ing] that facts [she] reported . . . were obscured, downplayed and falsified," *id.* at 84, and that the "retaliatory action against [her] [occurred] because of these communications," *id.* at 85. These allegations, which also appear in the proposed amended complaint, are sufficient to state a plausible WPA claim. *See Flores*, 384 P.3d at 1072 (stating that the WPA "prohibits a public employer from taking retaliatory action against a public employee because the public employee communicate[d] information about conduct that the public employee believes in good faith to be unlawful or improper").

Accordingly, on remand the district court should grant Ms. Burke an opportunity to pursue the WPA claim in her proposed amended complaint, minus the individual-capacity allegations.

### VI. Post-Ruling Amendment

Ms. Burke argues that the district court should have given her another chance to amend after dismissing her original complaint and rejecting her proposed amended complaint. While we believe that Ms. Burke should have had another chance to plead her privacy claim, we conclude that the district court did not abuse its discretion in

19

terminating her equal-protection, due-process, and LMRA claims based on the existing allegations. A district court does not abuse its discretion in denying leave to amend when "it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give [her] an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (internal quotation marks omitted). Ms. Burke's original complaint and proposed amended complaint each contained over 200 paragraphs of allegations in support of only a handful of non-complex legal claims. Yet despite providing an overabundance of factual information, Ms. Burke failed to plead equal-protection, due-process, or LMRA claims suggesting plausibility. Giving her another opportunity to recast her myriad allegations to support those claims would have been futile.

## CONCLUSION

We affirm the district court's judgment insofar as it (1) dismissed Ms. Burke's individual-capacity § 1983 claims; (2) dismissed her FPWA discrimination and retaliation claims; and (3) dismissed her WPA claim against the defendants in their individual capacities.

We reverse the district court's judgment insofar as it dismissed Ms. Burke's WPA claim against Secretary Burckle in his official capacity.

We vacate the district court's judgment to the extent it purported to dismiss non-existent § 1983 claims against Secretary Burckle in his official capacity.

We affirm the district court's decision denying leave to amend except to the extent it prohibited (1) the addition of FPWA and EPA discrimination claims that named GSD

20

as a defendant; (2) the naming of GSD in a WPA claim; and (3) the submission of a new amended privacy claim.

Accordingly, we remand for further proceedings as to violation of privacy, wage discrimination, and whistleblowing that are consistent with this Order and Judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge